## Dorothea Wartemberg v. Frederick Spiegel.

*Fraud: Proofs.* In this case, which is a suit to have a mortgage by complainant to defendant decreed to be given up and cancelled on the ground that it was obtained by fraud, it is held the proofs establish the claim set up by the bill, and that the testimony which the defendant himself gave tended rather to confirm than to disprove it.

*Mortgage: Consideration: Fraud.* A mortgage to secure defendant on a sale to complainant's son of his interest in a business they had before carried on together as partners cannot be considered as within the promise the defendant claims complainant had made him on the formation of the firm, that she would secure him against loss by her son in the partnership.

*Fraud: Fiduciary relations: Abuse of confidence.* One who has obtained from a woman who is old and feeble in intellect, and who has put herself into his hands in a transaction which specially concerned his interests, a mortgage as security for the debt of another, without the knowledge of her family, is bound to show in defense of the validity of his mortgage, that she fully understood what she was doing, and was acting freely, and that he has not abused the confidence thus reposed in him.

*Submitted on briefs January 29.   Decided February 26.*

Appeal in Chancery from Wayne Circuit.

*Chipman, Dewey & Hawes* and *Henry M. Cheever,* for complainant.

*Kane & Hibbard,* for defendant.

COOLEY, J.

The purpose of this suit is to have a mortgage by complainant to defendant decreed to be given up and cancelled, on the ground that it was obtained by fraud. The mortgage bears date November 20, 1872, and it appears that for a short time previous to this the defendant and Charles Wartemberg had been in partnership in a grocery and provision store, and defendant had just sold out to Charles his interest. Complainant, according to her account, was ignorant of the negotiations between Charles and the defendant, and she alleges that the latter came to her and obtained the mortgage by claiming to own everything in the store, and threatening to turn Charles off and not allow him any participation in the business or profits unless the mortgage was given. Defendant, on the other hand, avers that when he went into partnership with Charles it was at the solicitation of complainant, who promised that he should not lose by it, and that she would make good her promise by mortgage security if necessary; that after agreeing with Charles upon a sale, he went privately to complainant, and told her that he must have security for the purchase price; that she expressed a willingness to give it, and they both went to the office of justice Stoll, who prepared a note and mortgage for $950, which was the amount figured up by Charles as payable to defendant; and that complainant then executed them, telling him not to let Charles know about them, for fear of making trouble in the family, and that he promised not to do so, and further promised if he could obtain from Charles an endorsed note for the amount, these papers should be surrendered; that he told justice Stoll not to have the mortgage recorded for some days, in

order to give Charles an opportunity to make the securities, but not getting an endorsed note from him, the mortgage was retained and is insisted upon.

We are satisfied from the defendant's own statement, that this woman has been wronged. Passing by the fact that a mortgage to secure him on a sale to Charles could not be considered as within the promise he claims she made him that she would secure him against loss by Charles in the partnership, all the circumstances attending the obtaining of the mortgage, as they are stated by himself, are suspicious and tend very strongly to show that complainant was being deceived. No reasonable excuse is given for going to her without the knowledge of Charles, and under circumstances of secrecy, to obtain security for Charles' obligation, and her first remark, when he met her the day before obtaining the mortgage and showed her a statement from Charles that a certain sum was to be paid to defendant: "Mr. Speigel, if any thing is going to happen, as I told you before, I am willing to give you a mortgage," indicates strongly that her fears for her son were appealed to. Although he carries the idea that he told her in this conversation he was selling out to her son, the actual words of the conversation as he gives them, both on that day and the next, indicate rather that he was demanding security under the previous promise, and it is noticeable that when they went to the office of Mr. Stoll to have the papers drawn, no explanation whatever was made of the transaction to this gentleman, but throughout the defendant managed the whole transaction and complainant submitted blandly to his directions. This is somewhat remarkable if defendant believed his dealings were honest, for Mr. Stoll was a very proper person to consult on such matters, and when defendant was thus about to obtain from a woman, whom the evidence shows to have been very old and feeble in intellect, a security for the debt of another without the knowledge of her family, he was under the highest obligations to make it clear that she fully understood what she

was doing and was acting freely. But the subsequent circumstances are still more suspicious. Complainant, according to his story, having executed the mortgage, requested him to keep the transaction from the knowledge of her son, lest the son's wife should make trouble about it; though why she should be likely to make trouble for such a cause is not very apparent, and is not explained. All this time the transaction with Charles relative to the trade had remained incomplete, and defendant says he told Stoll not to put the mortgage on record for the present. This is denied by Stoll, and the mortgage was recorded at once. Defendant then went to complete his negotiations with Charles. The latter presented a new statement of the amount he was to pay defendant, which was somewhat less than the mortgage which had been obtained, and they settled upon that basis, defendant taking Charles' note for the amount, saying not a word to him about having already obtained satisfactory security. Neither did he make any attempt to obtain from Charles endorsed paper in accordance with the promise he claims to have made complainant, but he endorsed down the mortgage to the sum finally agreed upon, and then retained all the securities until complainant and Charles had become mutually aware of what had been done by each, and instituted proceedings against him for the fraud.

We have found it impossible to believe that these transactions were all right on the part of the defendant. This old woman seems to have put herself entirely into his hands in a transaction which specially concerned his interest, and it was for him to show that the confidence was not abused. The reasons he assigns for keeping the mother and son apart in the negotiations are so unsatisfactory that they ought to have been supported by the testimony of some disinterested person like Mr. Stoll, and his making no attempt to perform his alleged promise to complainant, that if he could obtain security from the son he would surrender the mortgage, and his putting the mortgage immedi-

ately on record in disregard of any such promise, go far to convince us that the promise was an afterthought on his part. We think complainant's case is substantially made out by the evidence, and that the testimony which the defendant himself gave tended to confirm rather than disprove it.

The decree must be reversed, and decree entered for complainant in this court, with the costs of both courts.

GRAVES, Ch. J., and CAMPBELL, J., concurred.

CHRISTIANCY, J., did not sit in this case.