INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY V.
KATIE SHUFORD.

Decided June 1, 1904.

**1.—Release of Damages—Fraud.**

Evidence considered and held to support conclusion that a release of damages by an injured railway passenger was procured by fraud and false representations through conspiracy between the company's physician and its claim agent.

**2.—Same—Cancellation—Verdict—Judgment.**

Verdict held to support a recovery of damages notwithstanding a previous settlement and release thereof which was attacked for fraud, though not specifically finding for the cancellation of that contract, in view of the form of instructions and verdict, under which the consideration previously paid was deducted from the amount of damages assessed.

**3.—Pleading.**

Petition held to sufficiently describe the injuries to plaintiff's person and the acts of fraud relied on to set aside a previous accord and satisfaction thereof, as against special demurrer on account of indefiniteness.

**4.—Charge—Repetition—Omission.**

Charges held not objectionable for undue repetition by giving requested charges nor for omission of defensive issues on which no instructions were requested, nor for charging on weight of evidence.

**5.—Carrier of Passengers—Degree of Care.**

It was proper to charge that a carrier of passengers was bound to exercise the highest degree of care for their safety.

**6.—Carrier of Passengers—Collision of Trains—Prima Facie Negligence.**

Proof of injury to a passenger by collision of trains, with no evidence to acquit the carrier of responsibility therefor, authorizes the court to assume, in its charge, the existence of negligence of defendant.

**7.—Evidence—Injury to Brain.**

Evidence held sufficient for submission of question as to plaintiff's brain being affected by personal injuries.

**8.—Fraudulent Representation—Fact—Opinion—Relation of Confidence—Mental Condition.**

The distinction between statements of fact and expressions of opinion, the effect of confidential relations and of taking advantage of a mind impaired by weakness and suffering, as bearing on fraud in procuring a contract and negligence in relying on the statements, discussed.

**9.—Fraud—Controlling Motive of Party Defrauded.**

The fact that a party induced by fraud to make a contract was partly influenced to do so by present need of money will not prevent the setting it aside for such fraud.

**10.—Fraud—Acts of Conspirators.**

Where a contract was procured by the authorized agent of the party asserting it, it is affected by the fraudulent representations, not only of such authorized agent, but of another conspiring with him to procure it for the party by such representations.

**11.—Avoiding Release—Tender.**

One suing for damages and attacking as fraudulent a release thereof previously made is not bound to bring into court the money previously paid, the defendant's rights being protected by allowing such payment as a credit on the amount of damages assessed.

**12.—Fraudulent Representation—Opinion—Fact.**

Statement by a railway claim agent that the right of an injured passenger with whom he was making settlement was doubtful, was not merely an expression of opinion as to the law.

Appeal from the District Court of Hays. Tried below before Hon. L. W. Moore.

*S. R. Fisher* and *J. H. Tallichet*, for appellant.

*C. L. Bass* and *W. G. Barber*, for appellee.

FISHER, Chief Justice.—This is a suit by the appellee against the railway company to recover damages for personal injuries sustained in a collision when a passenger on one of appellant's trains, and also to cancel a contract of settlement, which purports to be executed in consideration of $250, paid to appellee in satisfaction of all damages sustained, and to release appellant from all liability.

Appellant demurred generally and specially to so much of the petition as seeks cancellation, and for answer pleaded that the release in question was valid and binding, and was executed by the appellee in full settlement and discharge of all liability of appellant.

Verdict and judgment below were in plaintiff's favor for the sum of $4250, less $250 received by the plaintiff.

Plaintiff in her petition, as the grounds of cancellation of the release and contract of settlement, alleged that the execution of the same was procured by fraud and undue influence and trickery of the defendant and its agents, as follows: That during the few days following the collision plaintiff was treated for the injuries by a physician named Dupuy, who was in the employ of defendant, and who represented to her that he was her friend, and that he, not only as a physician, but as a friend, would advise with her and aid her to obtain all damage that was due her by the defendant because of said negligence and carelessness. The plaintiff trusted him as a physician and friend to do so, which he knew. That said Dupuy conspired with the claim agent of defendant to induce the plaintiff to accept $250 as full compensation for the damages she sustained and to execute the release upon the following representations: That the conspirators falsely represented to plaintiff that her injuries were external, local and slight, and were practically well, and that $250 was adequate compensation for all damages due by defendant for the injuries she had sustained, knowing that the plaintiff did not and could not know the condition of such injuries, and they falsely represented to her that it was uncertain whether the collision occurred by the carelessness and negligence of defendant, its employes and agents, at the time knowing that the plaintiff did not know whether the said collision was through the negligence of the appellant, and at that time was unable to ascertain that fact; that the plaintiff believed that Dupuy would disclose to her all the material facts known to him bearing upon the release, which might cause her to decide differently with reference thereto from the way she would decide were such facts not disclosed to her, which Dupuy well knew; that at no time during the negotiations about the release did Dupuy tell plaintiff, and he concealed and suppressed the facts from her, that no one could determine, within a few days after such collision, whether it would or would not cause serious injurious consequences to the person of plaintiff; and the

conspirators falsely represented to her that the injuries were external, local and slight, and were practically well, and that $250 were adequate compensation, and the plaintiff at that time did not know and could not know the condition of her injuries; that the representations were material and untrue, and the conspirators made them knowing that they were material and untrue, and intended that the plaintiff should believe them to be true, and be deceived and induced thereby to accept the $250 and execute the release; that the representations being material and untrue, and if the conspirators did not know they were untrue, they made them with a reckless disregard of whether they were true or false. and they were made in order to induce the plaintiff to accept the $250, and execute the release. That the representations were made upon the personal knowledge of the conspirators knowing that they were untrue, and that the plaintiff believed the representations were true and was deceived and controlled and induced thereby to execute the release and accept the $250 as full compensation for the injuries sustained. That she executed the release without reading its contents; and in effect, alleges that the said representations and statements that her injuries were slight and she was practically well, were all untrue, and that the amount of the damages that she did sustain by reason of the negligent collision as aforesaid, amounted to $25,000.

The facts in support of the verdict are substantially as follows: On the 16th of March, 1903, the appellee when a passenger on one of appellant's trains was seriously and permanently injured, to some extent, as alleged in her petition, by reason of a negligent collision of one of appellant's trains with the one upon which she was a passenger.

There is evidence upon which to base the verdict of the jury for the amount found. In fact there is practically no complaint of the verdict of the jury as to the amount. The last assignment of error in the appellant's brief states that the verdict is excessive. It is not followed up by any proposition or statement calling the attention of the court to any fact contained in the record indicating that the verdict is excessive. And the evidence bearing upon this subject authorizes the conclusion that her injuries, at the time that the release was executed and the representations made that induced its execution, were of a very serious character, much more so than was represented to be the case by the agents of appellant who induced her to execute the release by reason of the false representations as pleaded.

On Monday, the day of the collision, she reached San Antonio, the end of her journey, and as a result of the injuries sustained she went to bed and so remained until the following Friday, and during this time she felt very sick, with pains in her head, neck and shoulders, side and back. Friday night she left San Antonio and returned to her parents' home, and was there confined to her bed for nearly two months, during which time she was very sick with high fever, with pains in her head and spine, and suffered from nervousness, and during that time she was treated by physicians, and since the accident she has not been able to work, and

continues to suffer as before stated, and there is evidence to the effect that some of her injuries are permanent. These injuries were the proximate result of the negligence of the appellant by reason of the collision in which she was injured. At the time of the accident she was a nurse, and was dependent upon her labor for support, earning $2 a day while so employed.

On the day she reached San Antonio she sent for Dr. Paschal, a physician with whom she was acquainted, who treated her injuries. A Dr. Dupuy, a physician in the employ of appellant whom the appellee had known for two years, on the day she reached San Antonio, and when she was confined to her bed, without being sent for, visited the appellee and made an examination of her injuries, in order to ascertain their nature and extent, so as to report her condition to the appellant company; and at this first visit, as a result of his examination, he obtained all the data and information required upon which to base his report to the railway company; and the subsequent visits made by him were not necessary in order to obtain additional data upon which to base any further report to his employers.

It was at this time, which was Monday evening, he stated to appellee that she was not much hurt, and would be up in a few days. Tuesday morning he returned, and again to some extent examined into the condition of appellee, and told her she was getting along all right, and would be able to be up in a few days. He again returned Tuesday evening and inquired how she felt. Appellee replied that she felt sore. At neither of these visits was anything said about any demand or claim of appellee for damages. On Wednesday morning Dr. Dupuy again, without being invited, visited appellee, and asked how she was feeling; to which she replied that she was very sick and was nervous and had not been able to sleep. On this occasion he again stated to her that she would soon be better and would get all right in a few days, and suggested to appellee that she ought to get something from the railway company, and that he thought that the company would be willing to pay a small amount on account of her injuries, and said he would bring to her the appellant's claim agent. During these visits, the doctor impressed her with the belief that he visited her in her interest, and said to her that he would act as her friend and see that she would get something from the railway company.

On Wednesday evening Dupuy, in company with appellant's claim agent, one Griffin, visited appellee with the purpose of both to effect with her a settlement of her claim or demand against the appellant. At this time Dupuy introduced the claim agent to appellee, who stated that he had come in order to make a settlement with the plaintiff, to which she replied that she was too sick to talk much of anything. Plaintiff at this time did not know the extent of her injuries, nor that they were serious and permanent. The claim agent asked appellee what amount would compensate her for her injuries. She said she did not know. Whereupon, in the presence of Dr. Dupuy, he stated that she was not badly

hurt, and Dupuy then told her that her injuries were very slight, and he knew she would be up in a few days. She then, acting upon this statement, suggested $500 as compensation. The agent stated that payment of that amount was out of the question, and that she was not hurt, that her injuries were just a mere scratch. The doctor reiterated the statement that she would be all right. The agent then offered $250 and insisted that she come then to some conclusion, and said that she was sick and could not work, and would be in need of the money. Dupuy said that he thought that would be more than enough for the way she was hurt, and that this amount would compensate her. Thereupon she signed the release without reading the same, and she testified that she did not feel well enough to read it.

There is evidence to the effect that as a result of the injuries sustained appellee has not been able to work as a sick nurse nor to earn any money by her labor.

At this interview the contract of settlement was procured from appellee, and there was no one present but herself and the two employes of the appellant, the doctor and the claim agent. She was confined to her bed and was sick and suffering from the injuries she had received in the collision. The full nature and extent of her injuries, and the results that would likely follow from them, and which subsequently developed, were not known to her, nor were they explained to her by Dr. Dupuy or any other physician. Dupuy was a skilled physician, and the evidence warrants the conclusion that her injuries as a result of the accident were serious, and that there would likely arise the serious maladies which subsequently developed; and we can conclude from the evidence that these facts were known to Dupuy when he represented to her that her injuries were slight and that she would soon recover. The plaintiff reposed confidence in the statements of Dr. Dupuy and of the claim agent made in his presence, and believed these representations to be true when she executed the release, and in pursuance of such belief so executed the same.

Such statements and representations made by Dupuy and the claim agent were made for the purpose of influencing appellee to execute the release and to accept a small amount as compensation for the damages she had sustained; and upon this subject, the inference and deductions to be drawn from the evidence authorize the conclusion that these two employes of appellant conspired with each other, and were working together in a common purpose to procure a release from appellee upon payment of a small sum; and that in furtherance of this design, such statements and representations were made in order to induce her to believe that her injuries were slight, and that the amount paid to her was adequate compensation for the damages she had sustained. The statements and representations of Dupuy, which were concurred in by the claim agent, were more than mere general expressions of opinion. They could be construed as a statement of fact, and they were given that effect by the appellee, and the representations and statements of Dupuy were

made in such an unqualified way by a skilled physician in whom appellee had confidence, that she was justified in considering such statements more than a general expression of opinion as to her then condition, and the jury were authorized to give a like effect to such statements.

As an inducement to influence appellee to immediately execute the release, and as an auxiliary to the statements and representations as to her condition, they reminded her of her poverty and prostrated condition, and that her present needs should induce her to accept the $250; that the claim agent intended to leave that night, and that some doubt existed as to the liability of the railway company, and that the further time requested by her to consider the offer of compromise could not be granted. Upon this point she testified: "The agent wanted me to speak out, and said we would have to come to some conclusion, as he was leaving on that night's train, and that what was done must be done at once. I told him I wanted to wait until I could see my physician, Dr. Paschal, and then Dupuy said he thought Dr. Paschal would say the same thing as he had said." When the release was tendered to her for signature she did not read it, as she was feeling too sick to do so.

Upon the whole, the evidence is of a character to impress us with the belief that at the time the release was procured these two employes of appellant knew, or had good reason to believe, that the injuries received by appellee as a result of the collision were more serious than they represented them to be, and that such representations were falsely made for the purpose of inducing appellee to execute the release, and that they took advantage of her weak and prostrated condition, by means of these representations, to impress her with the belief that her injuries were slight, in order to induce her to accept the small sum of $250 as full compensation and to execute the release.

The acts of fraud and conspiracy alleged in the petition, were, in our opinion, established by the evidence. The release purports to be a full settlement and compromise of all claims for damages, present and prospective, sustained by the appellee by reason of the collision.

The appellant's brief contains what is asserted to be fundamental error in the judgment of the court, based upon the fact that neither the verdict nor judgment finds or determines that the contract or release should be canceled. The entire verdict is as follows: "We the jury find for plaintiff and assess the damages at $4250, less $250 received by plaintiff." Upon this verdict judgment was entered to the effect that the appellee recover of the railway company the sum of $4000 and costs of suit, for which let execution issue. The court in its general charge instructed the jury to the effect that the plaintiff sues "the railway company to set aside a certain release, which she executed to defendant for all injuries she may have received, known or unknown, by virtue of an alleged wreck while she was upon defendant's train, and seeks to avoid said release by alleging certain false representations made to her by the surgeon and claim agent of defendant. If you find for defendant upon this issue as under instructions hereinafter to be given you, you will

find for defendant, and prosecute your inquiry no further. You are instructed that said release is in all respects regular in its form, and can not be avoided except upon proof of the fraud alleged."

The charge then proceeds to submit to the jury the question whether the release was executed by reason of the false and fraudulent representations made by the surgeon and claim agent of the appellant, and that they knew at the time that such statements were false and untrue, and if such was the case, etc., then to find in favor of the plaintiff upon that issue.

The jury were further instructed that if the plaintiff did not rely upon the statements, but entered into the contract of her own free volition, then they should find for the defendant. The charge of the court may be considered in determining the effect to be given to the verdict; and if this is true, it is clear that the jury, in view of the charge, must have reached the conclusion that the execution of the release was fraudulently procured, as alleged, for otherwise they could not, in view of the charge, have returned a verdict in favor of the appellee for damages. They were pointedly instructed that if they did not find for the plaintiff on the issue of fraud in the execution of the release, then to proceed in their inquiry no further, and to return a verdict in favor of the defendant. We are of the opinion that the verdict and judgment, when construed in the light of the charge, practically determined and adjudicated the fact that the execution of the release was procured by the fraud alleged.

The second and third assignments of error, which complain of the action of the court in failing to sustain special exceptions urged by the appellant, are overruled. There is nothing vague or indefinite in the statement of the petition describing the character and extent of the injuries sustained by the plaintiff, and the issue of fraud as there presented is full, clear and definite.

The objections urged to the charge of the court as presented in the fourth assignment of error are not well taken. There is no clash between the general charge of the court and that given at the request of the appellee. The latter more fully presents the plaintiff's theory than is submitted in the general charge; nor do we think that when both are considered together, undue prominence was given to the issues made by the plaintiff's case. If the defendant desired a further or more full statement of the defensive issues raised in its answer, request should have been made by special charge that they be submitted.

We are of the opinion that the charge is not upon the weight of the evidence, as is urged in appellant's fifth assignment of error.

The sixth assignment of error complains of that part of the charge which requires the defendant to exercise the highest degree of care for the plaintiff's safety; the contention is that the railway company was not required to exercise the highest degree of care, but that high degree of care that a very cautious, prudent and competent person would exercise under the same or similar circumstances. The charge objected to is as follows: "The railroad company owed the plaintiff as a pas-

36 Civ.—17

senger the highest degree of care in protecting her against injury." The charge of the court properly submitted the degree of care that should be exercised by the railway company for the safety of its passengers. Houston & T. C. Ry. Co. v. George, 1 Texas Ct. Rep., 376; Texas C. Ry. Co. v. Burnett, 80 Texas, 536; Knauff v. Traction Co., 6 Texas Ct. Rep., 241; Gallagher v. Bowie, 66 Texas, 265; International & G. N. Ry. Co. v. Thompson, 8 Texas Ct. Rep., 761; Texas & P. Ry. Co. v. Davidson, 3 Texas Civ. App., 543; Texas & P. Ry. Co. v. Buckalew, 34 S. W. Rep., 166; Fort Worth & D. C. Ry. Co. v. Rogers, 24 Texas Civ. App., 383.

Further, in view of the evidence upon this subject, we think the trial court, in presenting to the jury the issue of negligence, could have assumed in its charge that the collision by reason of which the appellee was injured was occasioned by the negligence and want of care of the servants of appellant in operating the trains that collided. In fact there was no contest, so far as appears from the record, raised by the appellant upon this question. There is no dispute as to the fact that the appellee was a passenger on one of the trains, and it is clear from the evidence that the collision could and should have been avoided by the exercise of even ordinary care upon the part of the servants in control and operation of the trains. The evidence does not undertake to state any fact which would tend to acquit the appellant of negligence.

The seventh, eighth, ninth and other assignments of error complain of the verdict and judgment because the evidence does not warrant the submission of the question of conspiracy and fraud in procuring the release, and that at most the statements made by the agents of appellant as to the condition of appellee were mere expressions of opinion, against which no relief existed. These questions are practically disposed of by our findings of fact.

Under the seventh assignment of error is presented the proposition that the court erred in its charge in submitting any question as to the injury to the plaintiff's brain, for the reason that there was no evidence bearing on this subject. The plaintiff testified as follows: "I remained in bed from Monday until Friday. During that time felt very sick. My head was affected. There was pain in the back of my head, neck and shoulders. I left San Antonio Friday night and went home to my parents, and as soon as I got home went to bed and was in bed nearly two months, during which time I was very sick and had high fever; my head was hurting me and also my spine. I was nervous and could not sleep and my brain was confused and sore." There was some evidence of the physicians, in response to hypothetical questions, as to what extent the injuries sustained in the wreck might have been the cause of the pain in the appellee's head. The appellee also testified that she had never suffered with any nervous trouble before the

accident. In our opinion, this evidence is sufficient to justify the jury to consider whether the plaintiff's brain was affected.

Of course it is conceded that a mere erroneous expression of opinion affords no ground of relief, but when the expression takes the form of a statement of fact and is so intended, or when it is expressed by one familiar with the facts, and comes from a source in which the plaintiff reposes confidence, and the expression is of a nature calculated to induce the belief that it is more than a mere opinion, and is of a nature that can be construed as a statement of fact, and is so considered and is acted upon as such, its falsity, if concerning a matter material to the inducement to the execution of the contract, furnishes ground for relief. Newton v. Ganss, 7 Texas Civ. App., 90, 26 S. W. Rep., 81; Cole v. Carter, 22 Texas Civ. App., 459, 54 S. W. Rep., 954, 14 Am. and Eng. Enc. of Law, 2 ed., 35-39, and 2 Pomeroy Eq., sec. 878. This eminent author in the section mentioned states the rule as follows: "Whenever the statement, although relating to a matter of opinion, is the affirmation of a fact, it may be a fraudulent representation. Such an affirmation might be made in several forms. The very fact concerning which the statement is made may be the existence of an opinion. The existence of an opinion may be a fact material to the proposed transaction, and the statement that such an opinion exists becomes an affirmation of a material fact, and if untrue, it is a misrepresentation. The opinion might either be represented as held by a third person, or as held by the very party making the statement. As a single illustration, either the third person or the party himself might be an expert, and their opinion might be material, so that the representation that the opinion was held might be the affirmation of a most material fact. There is still another and perhaps more common form of such misrepresentation. Whenever a party states a matter, which might otherwise be only an opinion, and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation."

If we consider the statement of the physician as to the extent of her injuries as false, and that she relied upon the truth of such representations and reposed confidence in him as a friend and physician, which the verdict of the jury has determined to be the case, coupled with the fact that there is evidence tending to show that the agents of appellant took advantage of her necessities and of her physical and mental, weakened and prostrated condition, to induce her to execute the release, then the case of fraud is clear, and the contract of release was properly canceled.

In treating of the question of fraud, imposition and advantage taken by reason of weakened physical and mental condition, Judge Wheeler, in Ellis v. Mathews, 19 Texas, 397, says: "And it is immaterial from

what cause such weakness arises. Whether it be from temporary illness constitutional despondency, general mental imbecility, or the natural incapacity of early infancy, or the infirmity of extreme old age."

In Varner v. Carson, 59 Texas, 306, it is said: "An act which would not be considered fraudulent if perpetrated upon a person of mature or vigorous age, and of ordinary mental capacity, and between whom and the contracting parties there was no relation of trust or confidence, will be impressed with a fraudulent character if the suffering party be under duress or an infant or imbecile from old age or weakness of intellect produced by any cause, or if there be a relation of trust and' confidence between the contracting parties.

"The general theory of the law in regard to acts done and contracts made by parties affecting their rights and interests is that in all such cases there must be a free and full consent to bind the parties. Consent is an act of reason, accompanied with deliberation, the mind weighing as in a balance the good and evil on each side. 1 Story Eq., 222. A deliberate mind presupposes the possession of mental faculties capable of reflection and rational thought. If these faculties are lacking, for want of sufficient development, or by reason of natural decay or other physical infirmity, the law requires greater fairness on the part of those dealing with such subjects, and less proof of deceit, oppression or imposition will be sufficient to set aside contracts made with them than in ordinary cases. Ellis v. Mathews, 19 Texas, 390; Wartemburg v. Spiegel, 31 Mich., 400.

"No definite rule of law can be laid down as to what condition of mind or degree of mental imbecility is sufficient to avoid a contract made with a party taking advantage of it. As in the case of fraud itself, each case will depend upon its own circumstances, and the state of the mind must be taken in connection with the other facts of the transaction to determine whether or not the contract may be avoided.

"It is not necessary that the incapacity should be permanent, in order to avoid a contract, but a temporary suspension of faculties by fear or overwhelming grief is enough to require the strictest good faith on the part of those making representations to one in such condition. Wilson v. Watts, 9 Md., 356; Lavette v. Sage, 29 Conn., 577.

"The duty to observe the rules of fair dealing becomes still more obligatory when the person dealt with is not only not in a proper condition to enter into agreements, but confides in the opposite party and implicitly trusts to his statements in reference to the subject of the transaction. The most usual instances of relations of trust are those of guardian and ward, attorney and client, trustee and cestui que trust, etc. But these are not the only ones, and no enumeration can be made of the many different relations which may grow between parties in which the one confides to the other in business transactions. Some of these may require a more strict adherence to honesty than others, but in any case where it is clear that one party relied on the other and had a right to do so, and such reliance must have been known, a suffi-

cient relationship of confidence is shown to require more than ordinary good faith in dealing. Butler v. Miller, 1 Ired. Eq., 215; McCormick v. Malin, 5 Blackf., 509; Wilson v. Watts, 9 Md., 356."

The tenth, eleventh and twelfth assignments of error complain of the charge of the court and a special charge given at the request of the plaintiff, and of the error of the court in refusing charge number 6, requested by the appellant. These assignments are based upon the proposition that the general charge and the special charge given at the request of the plaintiff did not discriminate between mere expressions of opinion, and an opinion stated in the form of an affirmation of fact, and that the charge refused corrected this error.

We do not think the trial court committed error in giving the charges complained of. The case was submitted upon the theory that the representations made by Dr. Dupuy and Griffin were statements of fact, and the jury were required to believe that the representations and statements as to the condition of the plaintiff were so made; and that they were false and made for the purpose of inducing the execution of the contract of release, before plaintiff would be entitled to recover. The jury, from the manner in which this issue was presented, were required to believe, in effect, that such statements amounted to affirmations of fact. But, however, if the appellant desired the jury to pass upon the question as to whether the statements were mere expressions of opinion, for which the appellant could not be held responsible, then a proper charge should have been framed requesting the submission of that question. The charge requested, and which was refused, upon this subject, was that if the jury believed that the representations were the opinion of the person making them, then such representations would not avoid the release. As before stated, a false expression of an opinion may form the basis of relief, and it would not have been proper for the court to have broadly stated to the jury, as requested by this charge, that the appellant would not have been responsible for the expression of opinion as to the plaintiff's condition, made by the agents of appellant in procuring the release. The statements of these agents may have been an opinion, but still so expressed and made under such circumstances, as heretofore illustrated, as would make them responsible for its truth.

The same objection just pointed out to special charge number 6 requested by the appellant is applicable to appellant's refused instruction number 3, set out under its thirteenth assignment of error. These charges upon this subject were not accurate, and the trial court was not required to correct them, or to reduce them to proper form. Many of the facts embraced in these special charges were submitted by the charges given by the court.

What we have just said also applies to subdivision 1 of special instruction number 4, requested by appellant, as set out under its sixteenth assignment of error. Some of the facts submitted by this requested instruction were embraced in the charges given by the court.

The fifth subdivision of this requested instruction will be passed upon in considering the fourteenth and fifteenth assignments of error. These two subdivisions of the charge being incorrect, the court could properly refuse the entire charge, as it was not required to correct these inaccuracies.

It is insisted in the fourteenth and fifteenth assignments of error, that the court erred in not instructing the jury that if the plaintiff had time and opportunity to advise herself as to the truth or probable truth of the alleged representations and statements made by Dupuy and Griffin, and saw fit to act upon their said representations, she could not recover; and that such result should follow also if she had opportunity to advise herself in regard thereto, by conference with others or otherwise; that she could not be excused for relying and acting upon the representations made by these agents.

These charges ignore the artifice resorted to by the agents of the defendant in inducing her to hastily execute the release, and to prevent her from consulting with her regular physician, Dr. Paschal. The evidence shows that she desired time in order to consult with Dr. Paschal, but Dr. Dupuy informed her, in the presence of the agent, Griffin, that Paschal would say the same thing about the extent of her injuries as said by Dupuy. The agent, Griffin, reminded her of her wants and necessities, and intimated that the release and compromise should then be made, as he expected to leave on the night train. But, however, the fact that the plaintiff believed the representations and statements made by these agents and then acting upon them as true, without further investigation, if the representations were made in the form of a statement of fact, such failure to further investigate their truth and to advise with others would furnish no defense to the cancellation of the contract.

This court, in the case of the American Freehold Land Mortgage Co. v. Pace, 23 Texas Civ. App., 237, upon this subject said: "The special exception also in effect urges the proposition that the appellees were guilty of negligence in not examining and inspecting the deeds of trust before signing the same, and in relying upon the statements and representations of their opponents. In answer to the first first part of this contention, we refer to the case of Chatham v. Jones, 69 Texas, 744, and the recent case of Conn v. Hagan, 93 Texas, 334, where the learned justice of our Supreme Court uses this language: 'The defendant in error claims that Mrs. Conn was guilty of negligence in signing the deed of trust without reading it, and that therefore the court ought not to reform the instrument according to her testimony. If the failure to read the instrument was unexplained and there was no reasonable excuse for it, this proposition would be correct, but when the party is misled by the fraudulent representations of the other party, and caused by confidence in such person and his representations to sign the instrument without reading it, this does not constitute such negligence

as will deprive the maker of the instrument of equitable relief from the consequences of the fraudulent representations.'

"In Chatham v. Jones, supra, it is held that where a party was guilty of negligence in signing and executing a paper without reading it, was a question of fact and not of law. The case of Central Ry. Co. v. Kisch, L. R., 2 H. L., 120, is an answer to the concluding part of this contention. In the case cited it is stated that where it is established that a misrepresentation has induced a party to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector, that if he placed confidence in the statement he can not be charged with a want of caution, because he believed it was honestly and truly made. This principle was approved by our Supreme Court in the case of Labbe v. Corbett, 69 Texas, 503, and to the same effect are the cases of Roberts v. Plaisted, 63 Me., 335, and Matlock v. Todd, 19 Ind., 135." 14 Am. and Eng. Enc. of Law, 2 ed., 120-121.

The seventeenth assignment of error complains of the refusal of the court to give the following instruction requested by the appellant: "If you believe from the evidence that the plaintiff, Katie Shuford, in making the settlement with and executing the release to the International & Great Northern Railroad Company, was caused to do so by her own need of funds, and by the fact, if it was a fact, that she was alone in San Antonio, and that she had come to said place to work, you will return a verdict for the defendant." This issue was, in effect, submitted by the court in its main charge. The jury was there instructed that if the plaintiff did not rely upon the false representations as an inducement to the execution of the contract of release, but entered into the same of her own free volition, then they should find for the defendant. But the charge as requested was erroneous. It is true, if the plaintiff had executed the contract solely for the reasons and based on the facts submitted in this charge, and no fraud had been perpetrated upon her to induce her to execute the same, then she would not have been entitled to verdict and judgment of cancellation. But the charge does not submit to the jury the question that the release was executed solely upon the ground of her need of funds, and that she was alone in San Antonio, but merely instructs the jury that if she was caused to execute the release by need of funds and the fact that she was alone, would entitle the defendant to a verdict. These causes may have existed, but still it may have been a fact that one of the inducements to the execution of the contract was the fraud practiced upon her by reason of the false statements and representations concerning the extent of her injuries. These other influences may have concurred with the fraud in inducing her to execute the agreement of release, but if the fraud entered into the transaction and was in part an inducement, although not the sole inducement, the whole transaction is tainted and is subject to cancellation.

The charge requested under the eighteenth assignment of error is on the weight of the evidence, and was correctly refused. It ignores the fact that Dupuy and the agent Griffin conspired together for the purpose of fraudulently procuring the release, and by their joint effort, in furtherance of that common design, did procure it. It is not denied but that Griffin, Dupuy's coconspirator, had authority to represent the railway company in procuring the release. Dupuy being a party to the fraudulent conspiracy, and acting with one who had authority to procure the release, the representations made by both would be equally binding upon the appellant.

There is no merit in the nineteenth and twentieth assignments of error. The plaintiff in her petition did tender the $250 received, and the verdict and judgment of the trial court fully protected the appellant in that sum. It was not necessary that the plaintiff should bring the money into court and actually tender back to the defendant the $250 as a prerequisite to entitle her to recover judgment for damages. It was in the power of the court, and it was properly exercised in this case in entering the final judgment, to have protected the defendant in its rights as to this sum, and the verdict and judgment rendered did accomplish this purpose.

The charge requested as set out under the twenty-seventh assignment of error was properly refused. It was on the weight of evidence. The jury had the right to consider the representations and statements made by the agent, Griffin. As before stated, there is some evidence that he and Dupuy entered into a conspiracy in order to obtain the execution of the release by false representations as to the nature and extent of the plaintiff's injuries. Griffin participated in making such representations at the time and before the release was executed, and what he did, together with what was done by Dupuy, was in furtherance of the common purpose to be accomplished by and through the conspiracy.

The statement and representations referred to in the charge set out under the twenty-second assignment of error did not concern a mere matter of law. The fact whether the collision was the result of the negligence of the appellant, and the fact whether the latter might be held liable and responsible therefor, were facts which might have been known by the claim agent Griffin. His representations and statements concerning this matter, if any, would not necessarily be a statement or expression of opinion concerning a matter of law. But, however, the question as to the statement concerning this matter was not submitted to the jury as one of the grounds upon which they could base a verdict canceling the release.

Our findings of fact, together with the discussion of the questions previously passed upon, in effect dispose of the remaining assignments of error. But, however, the twenty-eighth assignment of error raises the question that as the appellee had opportunity to read and understand the release, that she was bound by it when she signed it; and that

as she freely and voluntarily executed it, it is conclusive of her rights. If we concede that she did voluntarily sign it, and that at the time she did not read it, but fully understood its nature and legal effect, and that it is ever so binding and conclusive in its terms against her, still, if its execution was procured by reason of false and fraudulent representations of a material nature that induced her to execute it, she at the time believing in the truth of such statements, and acting upon such belief signed the release, equity would cancel it.

We find no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused October 10, 1904.