## KOPPRASCH v. STONE.

1. SPECIFIC PERFORMANCE—ORAL CONTRACT TO LEAVE PROPERTY—BURDEN OF PROOF.

The burden of proof is upon plaintiff physician to show by clear and satisfactory proof his claimed oral contract with elderly woman, now deceased, that he would act as her physician without charge for the balance of her life and perform such other services in her behalf as she might require in return for her leaving him by will or deed all of her property of which she might be the owner at the time of her death, in order to have specific performance thereof.

2. EVIDENCE—TESTIMONY OF ORAL DECLARATIONS OF DECEASED PERSON—CONTRACT TO LEAVE PROPERTY BY WILL.

Oral declarations of deceased that she was going to leave her property to plaintiff in suit for specific performance of alleged contract to leave him the property by will or otherwise are closely scrutinized as such testimony is the least satisfactory evidence for the establishment of disputed facts.

3. SAME—REMARKS MADE BY DECEASED TO THIRD PERSONS.

Fragmentary remarks, claimed by third persons to have been made by the deceased, have little probative value, inasmuch as death has closed the lips claimed to have uttered them and thus cut off all refutation or explanation.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4, 7]  57 Am Jur, Wills § 197.
[1, 4, 7]  Decedent's agreement to devise, bequeath, or leave property as compensation for services.  69 ALR 14; 106 ALR 742.
[2]  57 Am Jur, Wills § 186.
[3]  20 Am Jur, Evidence § 1196.
[5, 8, 10, 11]  57 Am Jur, Wills § 185.
[6]  57 Am Jur, Wills § 192.
[9]  57 Am Jur, Wills § 201.
[12, 13]  41 Am Jur, Physicians and Surgeons § 74.
[14]  49 Am Jur, Specific Performance § 8.

4. SPECIFIC PERFORMANCE—ORAL CONTRACT TO CONVEY PROPERTY BY WILL—EVIDENCE.

To warrant a decree specifically enforcing an oral contract to convey property by will there must be something more than a mere unexecuted intention to make a will, there must be a meeting of minds, clearly proven.

5. SAME—ORAL CONTRACT TO CONVEY PROPERTY BY WILL—TESTIMONY VIEWED WITH CAUTION.

Testimony concerning oral agreement to leave property by will must be viewed with great caution because of frailties of memory, improbability of repeating precise language of deceased and expressing full state of mind of such person, and greater weight is given to the acts of alleged contracting parties.

6. APPEAL AND ERROR—CHANCERY CASES—DE NOVO HEARING—RECORD.

A suit for specific performance of an oral contract to leave property by will is an equity case which is heard by the Supreme Court de novo on the record made in the trial court.

7. SPECIFIC PERFORMANCE—ORAL CONTRACT TO CONVEY PROPERTY BY WILL—EVIDENCE.

Plaintiff physician held, not to have established by proof with the requisite degree of certainty his alleged agreement with deceased patient, an elderly woman, for services as her physician for the balance of her life after she had suffered a so-called stroke and to perform such other services as she might require in return for her leaving him by will or deed all of her property of which she might be the owner at the time of her death.

8. SAME—ORAL CONTRACT TO CONVEY PROPERTY—EVIDENCE—PROFESSIONAL SERVICES.

The fact that plaintiff in suit for specific performance of an alleged oral contract to leave property to him by will or deed, had rendered professional services to the deceased, is of slight probative force, especially where plaintiff kept a record of each service rendered.

9. SAME—ORAL CONTRACT TO LEAVE PROPERTY BY WILL—FIDUCIARY—BURDEN OF PROOF—EVIDENCE—FAIRNESS—UNDUE INFLUENCE.

One who occupied a position of trust and confidence with a person now deceased and with whom it is claimed the fiduciary made a contract to perform services in return for deceased's oral promise to leave all of her property by will or deed has the burden of proving not only the contract by clear and convincing evidence but also that the agreement was fair in its provisions and was entered into without undue influence.

10. SAME—ORAL CONTRACT TO LEAVE PROPERTY BY WILL—PHYSICIAN AND PATIENT—EVIDENCE.

Plaintiff physician who claimed his deceased patient had orally agreed to leave him all of her property upon her death in return for continuance of his services as physician and otherwise for the balance of her life after she had suffered a so-called stroke, failed to establish a case, where there is no proof as to the circumstances under which the alleged agreement was made nor as to the physical and mental condition of the deceased at the time it was made.

11. SAME—ORAL CONTRACT TO LEAVE PROPERTY BY WILL—BURDEN OF PROOF—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

The burden of proof upon a plaintiff in his suit for specific performance of an alleged oral contract to leave property by will, to establish such contract by clear and convincing proofs, is not lessened in any way by reason of the fact that plaintiff was barred by statute from testifying as to facts equally within the knowledge of the deceased (CL 1948, § 617,65).

12. PHYSICIANS AND SURGEONS—FIDUCIARY—UNDUE INFLUENCE—SCRUTINY OF EVIDENCE.

The physician occupies a position of trust and confidence as regards the patient and all transactions between them are closely scrutinized by the courts which must be assured of the fairness of those dealings and that they were entered into voluntarily and advisedly.

13. SAME—CONTRACT TO LEAVE PROPERTY BY WILL—CONSTRUCTION—EVIDENCE.

There is a presumption against the propriety of a contract between a physician and his patient with respect to rendition of professional and other services for her in return for her oral contract to leave him all of her property by will or deed and it is the duty of a court to refuse judicial sanction to such a contract until fully satisfied of the fairness of the transaction and that it is the intelligent act of the patient.

14. SPECIFIC PERFORMANCE—REMEDY—DISCRETION OF COURT.

The granting of equitable relief by way of specific performance is not a matter of strict legal right but rests in the sound discretion of the court.

Appeal from Allegan; Smith (Raymond L.), J. Submitted June 11, 1954. (Docket No. 48, Calendar No. 46,178.) Decided September 8, 1954.

Bill by William A. Kopprasch against Ethol W. Stone, administrator of the estate of Belle Haight, deceased, Ora H. Fox, Harold Haight and Howard Haight, heirs, for specific performance of alleged oral contract. Bill dismissed. Plaintiff appeals. Affirmed.

*Leo W. Hoffman*, for plaintiff.

*Harry Pell,* for defendants.

CARR, J. This is a suit in equity for the specific performance of an alleged oral contract between plaintiff and Belle Haight, who died on the 4th of November, 1951. The defendants are the administrator of the estate of Miss Haight and her heirs. The plaintiff is a physician. His bill of complaint alleged that the agreement between himself and Miss Haight provided in substance that he would act as her physician without charge for the balance of her life and perform such other services in her behalf as she might require, and that in return therefor Miss Haight agreed to leave him either by will or deed all property of which she might be the owner at the time of her death. The pleading further averred that plaintiff performed his part of the agreement but that on the death of Miss Haight no will or other legal paper designed to carry out the agreement on her part was found.

Defendants by answer denied the material averments of the bill of complaint, and alleged that any such agreement as the bill of complaint set forth was, and is, contrary to public policy. The answer denied that plaintiff was entitled to the relief sought. Following the hearing the trial court entered a decree dismissing the bill of complaint, and plaintiff has appealed.

On the trial in circuit court several witnesses for plaintiff testified with reference to statements made to them by Miss Haight to the effect that she had an agreement with plaintiff whereby she was to leave him all her property at her death in return for his services as her physician, past and prospective, and his looking after other matters in her behalf. The record indicates that most of plaintiff's witnesses were at the time of the trial, or previously had been, plaintiff's patients. Their testimony generally suggests that they entertained friendly feelings toward him.

Some months before her death Miss Haight had a serious illness, referred to by some of the witnesses as a "stroke." As a result she was unable for a time to carry on the business of conducting a small store of which she was the owner. However, she improved sufficiently to permit her to return to her place of business and to continue its operation. The record is not clear as to the amount of attention that she was able to give thereto, and as to the length of time that she was able to continue it. Most of the conversations with her to which plaintiff's witnesses testified apparently took place after she had suffered the so-called stroke. She was at the time of her death in November, 1951, 79 years of age.

On behalf of defendants, testimony was introduced for the purpose of rebutting plaintiff's claim that Miss Haight for a period of time prior to her death did not feel kindly toward her relatives. Proof was also introduced as to statements made by her tending to indicate that she had in mind disposing of her property other than for the sole benefit of plaintiff. It may be noted further in this connection that one of plaintiff's witnesses testified to a conversation with Miss Haight in which the latter made statements indicating that she was considering rendering financial assistance toward the construction of a hospital,

in which inferentially plaintiff would be interested. Another witness claimed merely that the statement made to her was that plaintiff would profit on Miss Haight's death. Apparently Miss Haight did not state to this witness that any agreement existed between herself and plaintiff, but emphasized that plaintiff was very good to her and that she "was going to do a great deal for him."

Following the death of Miss Haight probate proceedings were instituted, an administrator of her estate was appointed, and claims were filed. The property in the estate was inventoried at approximately $16,000. Among other claims was one by plaintiff for medical services in the sum of $1,642 and for other services valued at $482. It thus appears that, notwithstanding his claimed agreement with Miss Haight, plaintiff kept an itemized account of all services rendered by him to her, including a charge for each such service.

In order to be entitled to the relief sought the burden rests on plaintiff of establishing by clear and satisfactory proof the making of the contract as claimed by him. There is no direct proof as to any conversation between the parties. Plaintiff's case rests wholly on the testimony of certain witnesses as to alleged admissions against interest made by Miss Haight in casual conversations. It does not appear that any attempt was made, by either of the parties, to reduce the alleged oral agreement to writing to the end that definite proof as to such agreement and the terms thereof would be afforded.

This Court has in prior decisions repeatedly held that testimony of the character here involved must be scanned with suspicion and carefully weighed. Commenting on an analogous situation in *In re Cramer's Estate,* 296 Mich 44, 48, it was said:

"To further support his claim, plaintiff introduced testimony of the oral declarations of deceased that

.he was going to leave his property to Mr. Bell. This type of evidence must be closely scrutinized for, as was said in *Boam* v. *Greenman,* 147 Mich 106, such testimony is the least satisfactory evidence for the establishment of disputed facts."

Likewise, the following comment in *Rehn* v. *Booth,* :299 Mich 311, 314, is significant:

"Fragmentary remarks, claimed by third persons to have been made by the deceased, have little probative value, inasmuch as death has closed the lips claimed to have uttered them and thus cut off all refutation or explanation."

In *Sheardy* v. *Baker,* 323 Mich 364, in affirming a decree denying relief under proofs somewhat analogous to those in the case at bar, the Court summarized the rules previously recognized for the weighing of testimony of the nature here involved. Among other prior decisions there referred to was. *Kerns* v. *Kerns,* 303 Mich 23, in which this Court, in affirming a decree denying specific performance of an alleged oral agreement to leave certain property to the plaintiff, said, in part (pp 29, 30):

"To warrant a decree specifically enforcing an oral contract to convey property by will there must be something more than a mere unexecuted intention to make a will. There must be a contract, a meeting of minds, clearly proven. *King* v. *Luyckx,* 280 Mich 117; *Van Houten* v. *Vorce,* 259 Mich 545; *In re Cramer's Estate,* 296 Mich 44. The burden was on plaintiff to prove the contract alleged in order to have specific performance decree. *Drolshagen* v. *Drolshagen,* 230 Mich 444; *Sieg* v. *Sendelbach,* 256 Mich 456; *In re Cramer's Estate, supra.* In cases of this sort the court will view the testimony of the witnesses with great caution and will scrutinize it closely. As we said in *King* v. *Luyckx, supra* [p 122]:

" 'Our observations in *Paris* v. *Scott*, 267 Mich 400, are applicable to the situation presented by this appeal. We said in that case at page 403:

" ' "In cases of this kind, the testimony of witnesses must be viewed with great caution, because of the frailties of memory, the improbability of repeating the precise language of a person since deceased, of fairly expressing the full state of mind of such person, and because the change of a word may mean the difference between a binding contract and a mere expression of intention. Care must also be taken lest the court, out of consideration of equity or sympathy, make a contract for the parties where none existed, even though such contract might or would express their desires. Where the alleged contracting parties cannot testify, their acts loom large as compared with what witnesses say they said." ' "

See, also, *Adado* v. *Assid*, 332 Mich 628, 631.

This being an equity case we hear it *de novo* on the record made in the trial court. Because of the nature of the testimony relied on to support the alleged agreement the conclusion is fully justified that plaintiff has not established his cause of action with the requisite degree of certainty. The fact that, as it is claimed, plaintiff rendered services to Miss Haight of a professional character, and in other respects, is of slight probative force. It does not appear that there was any change in the relationship of the parties following the alleged making of the contract. Plaintiff did not alter his position in any way, nor did Miss Haight. The fact that a record of each service rendered was kept is clearly consistent with the theory that at the time plaintiff expected to receive payment in the ordinary manner. The facts and circumstances do not necessarily tend to show that plaintiff was rendering the services in question pursuant to the agreement that he now claims was in existence.

If the making of the oral agreement in question were considered as sufficiently shown by the proofs, the conclusion would not follow that plaintiff is entitled to specific performance. The relation between the parties was, as the trial judge pointed out in his opinion, one of trust and confidence. In consequence the burden rested on him of showing not only that the agreement was made as claimed but also that it was fair in its provisions and entered into without undue influence. We find in the record no proof as to the circumstances under which the alleged agreement was made, nor as to the physical and mental condition of Miss Haight at the time. The fact that plaintiff could not testify as to matters equally within the knowledge of deceased* does not change the situation in this respect. Notwithstanding such incompetency the burden of proof still rested on him to establish the elements of his case.

In 41 Am Jur, p 196, Physicians and Surgeons, §74, it is said:

"A person in ill health is more subject to the domination and undue influence of another than is a person of sound body and mind. The physician naturally is in a position of trust and confidence as regards the patient, and his opportunities to influence the patient are unusual. Hence, all transactions between physician and patient are closely scrutinized by the courts, which must be assured of the fairness of those dealings. A gift from patient to physician, although not bad per se, is subject to the suspicion that exists wherever a gift is made to a person in a confidential relation to the giver, and on the physician is cast the burden of proving that the gift was made fairly and without undue influence. In regard to any contract between physician and patient the rule is the same, and a physician has the burden of proving that the patient entered into it voluntarily and advisedly."

* See CL 1948, § 617.65 (Stat Ann § 27.914).—Reporter.

Of like import is 70 CJS, p 941, Physicians and Surgeons, § 36. In *Smith* v. *Cuddy,* 96 Mich 562, the plaintiff was the sister of the defendant. The Court found that the relation between them was one of trust and confidence. In setting aside a conveyance executed by plaintiff to defendant, it was said in part (pp 568, 569):

"Under the circumstances of this case, the burden was upon the defendant to show not only that complainant fully understood the terms, import, and effect of the instrument executed, but, if her intent was as expressed by that instrument, to show that such intention was not produced by undue influence exerted by himself. *Gibson* v. *Jeyes,* 6 Ves Jr 266 (31 Eng Rep 1044); *Huguenin* v. *Baseley,* 14 Ves Jr 273 (33 Eng Rep 526); *Hoghton* v. *Hoghton,* 11 Eng Law & Eq 134 (15 Beav 274, 51 Eng Rep 545). Defendant's testimony fails to satisfy us upon either point. Transactions of this nature are regarded by courts of equity with suspicion, and scrutinized with vigilance. The presumption is against the propriety of the transaction, and, as has been frequently said in our own cases, the duty of courts is to refuse judicial sanction to such an instrument until fully satisfied of the fairness of the transaction, and that the instrument is the intelligent act of the person executing it. *Seeley* v. *Price,* 14 Mich 541; *Witbeck* v. *Witbeck,* 25 Mich 439; *Wartemberg* v. *Spiegel,* 31 Mich 400; *Barnes* v. *Brown,* 32 Mich 146; *Duncombe* v. *Richards,* 46 Mich 166; *Jacox* v. *Jacox,* 40 Mich 473 (29 Am Rep 547); *Finegan* v. *Theisen,* 92 Mich 173."

The foregoing language was quoted in part, with approval, in *Beattie* v. *Bower,* 290 Mich 517, 527. See, also, *In re Eldred's Estate,* 234 Mich 131; *Connor* v. *Harris,* 258 Mich 670; *Bruso* v. *Pinquet,* 321 Mich 630. This Court has recognized that the granting of equitable relief by way of specific performance is not a matter of strict legal right but rests in the sound discretion of the court. *Kinney* v. *Kinney,*

220 Mich 311, 316, and prior decisions there cited. In the case at bar we think that the trial court reached a correct conclusion. The proofs offered were insufficient to establish with the requisite degree of certainty that the oral agreement was made as claimed; and if such issue were determined in plaintiff's favor there is a total absence of proof as to a lack of undue influence exercised against Miss Haight in the making of the agreement. Neither is there any showing as to the fairness of the alleged contract.

The decree of the trial court is affirmed, with costs to defendants.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.