### CHRISTOU *v.* ELIOFF.

SPECIFIC PERFORMANCE—CONTRACTS—BURDEN OF PROOF—FIDUCIARIES
—EVIDENCE.

Evidence presented in suit to enforce certain contractual undertakings whereby plaintiff husband, cousin of individual defendant, now deceased, and wife were to receive certain property in return for plaintiffs' agreement to care for such defendant, *held*, to fail to show plaintiffs met their burden of proof, cast upon them as fiduciaries of the defendant in view of his physical and mental condition, entitling them to relief.

Appeal from Jackson; Dalton (John C.), J. Submitted January 18, 1962. (Docket No. 91, Calendar No. 48,977.) Decided May 17, 1962. Rehearing denied July 2, 1962.

Bill, originally by Katherine A. Christou against Consumers Power Company, a Maine corporation, to compel registration of stock assigned as security. Gus Lazaroff added as party defendant and, following his death, case continued in the names of Katherine A. Christou and Sam Christou against Kita Elioff, individually and as executrix under the last will of Gus Lazaroff, deceased. Cross bill by defendant Kita Elioff asking cancellation of stock assignment and other financial transactions of deceased. Bill dismissed and decree for defendant on cross bill. Plaintiffs appeal. Affirmed.

REFERENCES FOR POINTS IN HEADNOTE
49 Am Jur, Specific Performance § 80.

*John J. Gallagher,* for plaintiffs.

*Kelly, Kelly & Kelly* (*Phillip C. Kelly,* of counsel) and *Samuel W. Barr,* for defendant.

ADAMS, J.   Plaintiffs sue in equity for the purpose of enforcing certain contractual undertakings executed by Gus Lazaroff.   The defendant is his daughter and executrix.

On May 31, 1957, Gus Lazaroff, approximately 73 years of age, was admitted to the hospital because of high blood pressure, hardening of the arteries, and cerebral complications.

The situation between Gus Lazaroff and his daughter is set forth in a letter she wrote to him containing the following paragraph:

"My mother put in very poor life with you.   Me you put in to work when I was little and when the time came for my wedding it was necessary to borrow money in order to buy things.   We did not have a life with you, and only God knows how—how we passed—how we lived with you."*

Into this unhappy relationship between the father and daughter stepped the Christous.   Sam Christou, a cousin of Gus Lazaroff, and his wife, Katherine, undertook his care.   He went to their home on July 1, 1957.   There was some discussion between Lazaroff and the Christous with regard to compensation for his care.   Robert N. Curtis, an attorney, drew a will, executed on July 10, 1957, paragraph 3 of which provides:

"I give, devise and bequeath unto my cousin, Sam Christou, of Jackson, Michigan, 42% of the rest, residue and remainder of my estate."

For a period of approximately 1 year the Christous looked after Gus Lazaroff.   For a time they

---

* The language is that of an interpreter at the trial.

received $100 per month. Later their compensation was increased to $150 per month. They received quarterly dividend checks from the Consumers Power Company stock totaling $2,268. Some of the money was disbursed for the benefit of Lazaroff.

In August of 1958, Gus Lazaroff executed a promissory note to Katherine A. Christou for $15,000 for services rendered and to be rendered, and assigned to her as security 750 shares of Consumers Power Company common stock. Neither of these instruments bear an exact date. Neither is witnessed nor acknowledged.

Mr. Curtis also prepared an instrument in which Gus Lazaroff agreed to leave 42% of the residue of his estate to the Christous in return for their undertaking to care for him. The instrument was executed on September 6, 1958. It was witnessed by John J. Gallagher as to the Christous. As to Lazaroff, the witnesses were Bertha Gertrude Eck and Anna E. Nigh. On September 25, 1958, Sam Christou was purportedly made the joint owner with Lazaroff of a $10,000 Security Savings & Loan Association account. Lazaroff signed the authorization with an "X".

Plaintiffs filed an action in which they sought to enforce their lien upon the Consumers Power Company stock, and to have the court decree compensation to the plaintiffs according to the will, the assignment, and the agreement. Defendants filed an answer and cross bill alleging fraud, duress, and undue influence. In response to plaintiffs' pretrial statement, Kita Elioff further alleged that the plaintiffs "occupied a fiduciary relationship to him (Lazaroff), and that the burden of justifying such actions is upon the plaintiffs."

At the end of plaintiffs' proofs, on motion to dismiss the court held that while the issue of mental incompetence was not pleaded, nevertheless there was

no surprise to the plaintiffs and that since the proofs showed Gus Lazaroff to have been mentally incompetent, the motion should be granted. Appeal was taken to this Court from denial of a motion for a rehearing. The case was remanded to permit the trial court to take such additional testimony as the parties desired. This was done. A decree was then entered, dismissing plaintiffs' bill of complaint, canceling the assignment of Consumers Power stock and canceling the assignment to Sam Christou of the Security Savings & Loan Association account. In his opinion, the judge held that because the plaintiffs had failed to meet the burden of proof imposed upon them to show that the various agreements had been entered into without undue influence, and because plaintiffs had failed to show that execution of them was the intelligent act of Gus Lazaroff, said agreements should be canceled.

The will, executed on July 10, 1957, is not an issue in this case. It was revoked by a will dated October 13, 1958, which was admitted to probate in Wayne county.

The question is the validity of the instruments executed in August and early September of 1958.

Dr. John E. Ludwick, plaintiffs' witness, who had been Lazaroff's doctor for many years, testified that Lazaroff had his first cerebral accident in May of 1957, and had several thereafter, sometimes losing consciousness for 2 or 3 days. On November 13, 1957, he had an appendectomy. On February 13, 1958, surgery was performed for a urinary tract obstruction. Lazaroff came and went from the hospital on the doctor's orders. He received good care while at the home of the Christous. The doctor states "at no time did I see any neglect of this man or any failure to take the proper care of him."

Dr. John E. Ludwick, in tracing the medical history of Mr. Lazaroff, states:

"He developed a great deal of mental deterioration and became progressively mentally deteriorated. There were long periods of time I would consider him completely mentally incapable."

In describing his condition on September 12, 1958, the doctor stated:

"He was completely out of touch with things. He was a mental case as well as a physical case."

And in response to another question:

"He had reached the point of deterioration where he couldn't have become competent again."

The deposition of Gus Lazaroff was taken on December 19, 1958, at Wayne, Michigan. Portions of it occupy 44 pages of the record. They present a picture of almost complete senility. The witness appears to have wept continuously throughout the taking of the deposition. He denies ever having executed a note to Katherine Christou for $15,000, or ever having executed or agreed to a document whereby he would give Sam and Katherine Christou 42% of his property. While he may have had testamentary capacity, the deposition does not evidence the capacity of one capable of handling his own affairs. It supports Dr. Ludwick's evaluation that "I don't think he was mentally competent on September 6, 1958."

Bertha Gertrude Eck testifies that Lazaroff glanced over the agreement, read it, not very particularly, and signed it. There is no testimony on her part with regard to his capacity or desire to execute the same. In fact, she states: "He was wanting to make a will." The testimony of Anna E. Nigh was not taken. See *Duncombe* v. *Richards,* 46 Mich 166.

With regard to the execution of the $10,000 Security Savings & Loan Association account, Grace

M. Larson, a practical nurse, was the only one of 2 witnesses to the assignment to testify. She states with regard to Lazaroff's condition:

"The one side he couldn't use at all, and he had to be fed, and he was incontinent and he couldn't speak very good English and I would say that he was confused."

The facts in this case clearly show that a fiduciary relationship existed between Gus Lazaroff and the plaintiffs. His physical and mental condition was such that they owed a duty to him quite different from that between parties of ordinary competence. *Seeley* v. *Price,* 14 Mich 541; *Beattie* v. *Bower,* 290 Mich 517; *Bruso* v. *Pinquet,* 321 Mich 630.

While apparently Lazaroff had adequate mental capacity to make the arrangements which he did make in 1957 when he went to live with the Christous, even at that time, as has been noted, he was in a bad condition. From then on, a succession of ills and maladies beset him—an appendectomy, surgery for a urinary obstruction, a series of cerebral accidents. His own doctor stated: "He had lived a long time beyond his expectancy." Add to this the failure to produce a single witness who gives satisfactory evidence of the competency of Lazaroff in 1958 when the series of documents sued upon were purportedly executed, and it can only be concluded that plaintiffs failed to meet the burden of proof the law casts upon them in circumstances such as these. *Spencer* v. *Hill,* 336 Mich 22; *Smith* v. *Cuddy,* 96 Mich 562; *Wartemberg* v. *Spiegel,* 31 Mich 400; *Kopprasch* v. *Stone,* 340 Mich 384; *Finegan* v. *Theisen,* 92 Mich 173; *Connor* v. *Harris,* 258 Mich 670.

The trial court did not err. Decree affirmed, with costs to appellees.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.