## MANHARD HARDWARE CO. *v.* ROTHSCHILD.

1. FRAUDULENT CONVEYANCES—DEFENSE—INDEFINITE ANSWER.

    Where a conveyance by a debtor to his wife is attacked by creditors as without consideration, an allegation in the answer that the grantor was indebted to the grantee "for several hundred dollars that she from time to time had loaned him" is too indefinite to form the basis of any legal or equitable right as against creditors.

2. SAME—HUSBAND AND WIFE—FAILURE TO TESTIFY—PRESUMPTIONS.

    The failure of a husband and wife, defendants in a creditor's bill, to take the stand and explain the transactions complained of as fraudulent, justifies the court in drawing a presumption against them.

3. SAME—APPEALABLE INTEREST—COSTS.

    A decree setting aside conveyances as in fraud of creditors, and providing that costs shall be paid from the property, is not appealable by the grantor, although the grantee makes no contest.

4. PARTNERSHIP ASSOCIATIONS—TRUSTEES IN LIQUIDATION—PLEADINGS.

    A bill by a partnership association, signed by the person bringing the suit in its behalf as "trustee in liquidation," and with a *jurat* stating that he is trustee in liquidation, and makes oath as such, and is authorized to sign its name to the bill, sufficiently alleges that complainant is in liquidation; such description being as effectual in the signature and *jurat* as elsewhere.

5. SAME—DEATH OF TRUSTEE—ABATEMENT OF SUIT.

    A trustee in liquidation, who signed and swore to the bill in a suit brought by a partnership association, is not a party, and the *status* of the suit is not affected by his death.

Appeal from Manistee; McMahon, J. Submitted October 25, 1899. Decided November 7, 1899.

Judgment creditor's bill by the Manhard Hardware Company, Limited, against Solomon Rothschild, Max

Simon, Charles Van Pelt, Rosa Rothschild, Simon Wetzler, David Sax, and Alexander Thal.   From a decree for complainant, defendants Rothschild and Simon appeal.   Affirmed.

Complainant is a partnership association, limited, organized under chapter 160, 2 Comp. Laws 1897.   In March, April, and May, 1893, it was a creditor of defendants Solomon Rothschild, Max Simon, and Charles Van Pelt, copartners doing business under the firm name of the Northern Cedar Shingle Company.   The indebtedness was for goods sold and delivered, and for which two notes were given, dated March 1st, due June 1st, two dated April 1st, due July 1st, and one dated May 5th, due August 5th.   Upon these notes complainant obtained a judgment in the circuit court for the county of Schoolcraft on September 6, 1893, for $1,662.80.   On February 16, 1894, after the due issue and return of an execution *nulla bona*, it filed this, a judgment creditor's bill, alleging that certain transfers of real and personal property by the defendants in that suit were fraudulent and void as to creditors.   The complainant was in liquidation, and the bill was signed by "David H. Jerome, Trustee in Liquidation."   The *jurat* states that Mr. Jerome was a trustee in liquidation of said company; that he made the oath as said trustee, and was authorized to sign its name to said bill.   Decree was rendered for the complainant.   All the defendants, except those forming the partnership, and Rosa Rothschild, the wife of Solomon, were nonresidents. Personal service was had upon Solomon and Rosa Rothschild, Simon, and Van Pelt.   The other defendants did not appear.   The defendants Rothschild, Simon, and Rosa Rothschild alone answered and appealed.   The appealing defendants filed an unsworn answer, in which they deny the fraudulent character of the transactions.   Rothschild and Simon allege in their answer that they have no property whatever to be applied on the payment of the debts of the copartnership.   The answer, as to the transfers to defend-

ant Rosa, alleges "that said defendant Rothschild was indebted to his wife, Rosa Rothschild, for several hundred dollars in cash that she from time to time had loaned him." The defendants introduced no testimony. In 1890 Rosa was a member of the firm of Rothschild & Co., composed of herself and another. That firm failed, and a receiver was appointed. The assets paid but a small per cent. of the debts, and Rosa applied to have her exemptions set aside for her. The transfers alleged to be fraudulent are as follows:

"On April 15, 1893, Rothschild assigned to David Sax a mortgage for $2,500, known as the 'Bolling Mortgage,' and dated January 10, 1891.

"April 10, 1893, Rothschild assigned to defendant Wetzler a mortgage for $1,900, known as the 'Weaver mortgage.'

"On the date last mentioned, Rothschild also assigned to Wetzler another mortgage for $800, and on the same day assigned to Wetzler a decree calling for $3,000, dated June 13, 1893.

"On June 3, 1893, Rothschild assigned to Sax a mortgage for $500, known as the 'Schroeder Mortgage,' and on the same day also gave a mortgage on other property for $3,800.

"On June 6, 1893, Max Simon gave a mortgage for $450 to Wetzler.

"On June 5, 1893, Rothschild gave a quitclaim deed of certain property to Thal for a nominal consideration of $400.

"On February 1, 1893, Rothschild gave to his wife, Rosa, a bill of sale of his meat-market for a consideration of $500. This bill of sale was filed and recorded July 17, 1893.

"On June 28, 1893, Rothschild gave Wetzler a chattel mortgage for $750 on certain personal property. This mortgage was filed for record July 21, 1893.

"On February 28, 1893, Rothschild gave his wife a bill of sale of certain horses and wagons for a consideration named therein as $1,200. This bill of sale was filed September 5, 1893."

In April, 1893, Mr. Smurthwaite, an attorney, upon request of a business house, interviewed Mr. Rothschild

in regard to his financial standing. Mr. Rothschild said at first that he was not in the habit of making statements as to his standing. Mr. Smurthwaite informed him that he was asked to make a report. Being asked if he was worth more than twenty or twenty-five thousand dollars, he replied, "I would hate to sell out for that." About this same time he became surety on a liquor bond in which he made affidavit that he was worth $3,000 in unincumbered real estate situated in Manistee county. He made similar affidavits in 1894, 1895, and 1896 upon other saloon bonds. He was the attorney-in-fact for his wife and defendant Sax.

*Dovel & Smith* (*Thomas S. Jerome*, of counsel), for complainant.

*McAlvay & Grant*, for appellants.

GRANT, C. J. (*after stating the facts*). 1. The appealing defendants first contend that there was no evidence of fraud in these transactions. We cannot concur in this contention. Rosa Rothschild was a bankrupt shortly before. She does not in her answer give dates or amounts, or state where she obtained the moneys which she claims to have loaned to her husband. What she means by "several hundred dollars" is conjectural. This allegation is too indefinite to form the basis of any legal or equitable right as against creditors. *Felker* v. *Chubb*, 90 Mich. 26. According to the finding of the judge, which is supported by the testimony, Rothschild, about the time this indebtedness was incurred, represented himself as worth $20,000. Shortly afterwards he had nothing to apply in payment of his debts. He and his wife could have shown the *bona fides* of the transaction by their testimony, had they chosen to do so. Some of these conveyances were kept off record for a long time. The bill of sale to Rosa, of February 28th, was recorded just the day before the judgment sued upon in this case was rendered. These facts were sufficient to authorize a decree

in favor of complainant, unless the defendants chose to take the stand and explain the transactions. It was in their power to place the *bona fides* beyond question. They chose to remain silent. The failure to produce this evidence, so peculiarly within their knowledge, justifies courts in drawing a presumption against them. *Lake* v. *Nolan*, 81 Mich. 112; *Warren* v. *Holbrook*, 95 Mich. 185 (35 Am. St. Rep. 554); *Schaible* v. *Ardner*, 98 Mich. 70. Complainant showed sufficient to cast the *onus probandi* upon the grantees and vendees in these conveyances. *Schaible* v. *Ardner, supra.*

2. Rothschild and Simon have no interest in the property which is the subject of this controversy. They have parted with it, and have no legal interest to be protected. They can derive no benefit from a reversal of the decree. They therefore have no pecuniary interest in this suit. They do not represent their vendees, who are not before this court, and are not making a defense. They are nonresidents, were not served with process, and the statute provides a remedy for them if they choose to avail themselves of it. When they choose to appear in court, their rights will be considered. But Rothschild and Simon have no appealable interest. *Abbott* v. *Alsdorf*, 19 Mich. 157; 2 Enc. Pl. & Prac. 157; *Fairbairn* v. *Middlemiss*, 47 Mich. 372; *Adams* v. *Woods*, 8 Cal. 315; *Hemmenway* v. *Corey*, 16 Vt. 225. The decree provides that the costs shall be satisfied and paid out of the property. The appealing defendants therefore have no interest in this respect.

3. Appellants contend, also, that there is no allegation in the bill, nor any proof, that the complainant is in liquidation, and that trustees have been appointed to wind up its affairs. They contend that such trustees can act only by authority of some court of competent jurisdiction, and that their authority must be proven. The statute provides for these trustees without the intervention of courts. 2 Comp. Laws 1897, § 6087. The association is continued in existence for the beneficial winding up of its

affairs. Section 6086. Suits must be brought by and against the association in the name thereof. Section 6088. Whether, under this statute, it is essential to allege and prove the decision of the corporation to go into liquidation, *quære.* Whether it is in liquidation or is in active operation does not concern the defendants. In either event the association is the party bringing the suit. There is no danger that the defendants will be subjected to another suit. It is difficult, therefore, to see what interest they have in raising the question. However this may be, the signature and the *jurat* are a sufficient statement that the association is in liquidation. The bill commences as follows: "Your orator, the Manhard Hardware Company, Limited, a corporation duly organized under the laws of this State, and doing business at the city of Marquette, complainant, respectfully shows," etc. If to this had been added the words "in liquidation," it would have described the *status* and character of the association. Such description is as effectual in the *jurat* and signature as elsewhere in the bill. The defendants, if they desired to contest the existence of the corporation as alleged, should have raised the question by plea in abatement. 3 Comp. Laws 1897, § 10471.

4. It was admitted upon the record that, before the hearing, the trustee who signed and swore to the bill in behalf of the corporation had died, and it is claimed that his death should have been suggested upon the record, and another appointed to take his place. Mr. Jerome was not a party to the suit. The party complaining is the association. The death of an officer of a corporation does not affect the *status* of a suit.

Decree affirmed, with costs.

The other Justices concurred.