DETROIT TRUST CO. *v.* HOCKETT.

1. FRAUD—PRESUMPTIONS—BURDEN OF PROOF.
   Fraud may not be presumed and burden of proving it is upon plaintiff in suit to set aside transfer of assessable trust company stock.

2. SAME—INFERENCES—PRIMA FACIE CASE—BURDEN OF EXPLANATION.
   When inferences from facts presented by plaintiff are so strong as to make out a *prima· facie* case of fraud and defendant remains silent and offers no explanation to refute such inferences, plaintiff should recover.

3. PLEADING—FAILURE TO DENY—ADMISSIONS.
   Failure to make explicit denial, or at least a statement of insufficient knowledge to form a belief, in response to the material allegations in a bill constitutes an admission of itself (Court Rule No. 23, § 2 [1933]).

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—THEORY OF CASE.
   Question of evasiveness of defendant's answer in suit by receiver of trust company to set aside transfer of assessable stock, not raised in appellant's brief, is not considered on appeal from decree in transferor's favor but answer is treated on theory it was intended to deny allegations of the bill.

5. EVIDENCE — JUDICIAL NOTICE — DEPRECIATION IN REAL ESTATE VALUES.
   In suit involving solvency of a trust company, Supreme Court takes judicial notice of the depression and accompanying depreciation in real estate values.

6. BANKS AND BANKING—TRUST COMPANY—TRANSFER OF ASSESSABLE STOCK—PRIMA FACIE CASE—BURDEN OF PROOF.
   Under evidence showing transfer of assessable shares of trust company stock was made about three weeks after an informal meeting of stockholders at which transferor's son and agent was present, it was evident that company was *in extremis* at that time, its stock had suffered a marked and rapid decline in market value in the course of preceding year and was re-

moved from sale on exchange, company had ceased paying dividends and, upon appointment of receiver in less than four months after such transfer, was found hopelessly insolvent, receiver *held*, entitled to set aside such transfer, where defendant, evasive in such answer as was made, did not offer any explanation of the transaction, nor show that consideration was paid, or that transferee was financially responsible, or that transaction was *bona fide*, the inference being that the transfer was made for purpose of avoiding imminent stockholders' assessment and sufficient to shift burden of proceeding upon defendant transferor (3 Comp. Laws 1929, §§ 12005, 12024).

7. SAME—TRUST COMPANY—TRANSFER OF STOCK—STATUTORY LIABILITY.

When stock in a trust company is sold under such suspicious circumstances as to leave the sole inference that the transfer was not *bona fide*, and no reasonable explanation is offered by the transferor, the latter is not relieved of the statutory liability (3 Comp. Laws 1929, §§ 12005, 12024).

8. SAME—TRUST COMPANY—TRANSFER OF STOCK—FRAUD—EVIDENCE.

In suit to set aside transfer of assessable trust company stock on ground it was made in fraud of trust company's creditors, the court may take into consideration.the failure of defendant or other available witnesses to testify, as such failure is in itself a badge of fraud where plaintiff receiver had made a *prima facie* case (3 Comp. Laws 1929, §§ 12005, 12024).

9. SAME—TRUST COMPANY—RECEIVER'S SUIT—STOCK ASSESSMENT—JOINDER OF PARTIES.

Under statute providing that trust company stockholders shall be individually liable for assessments on its stock, receiver is not required to join all stockholders in enforcement of liability against transferor of stock alleged to have been transferred in fraud of trust company's creditors (3 Comp. Laws 1929, §§ 12005, 12024).

10. APPEAL AND ERROR—PARTIES ON APPEAL—DISMISSAL.

Dismissal of appeal from decree against transferee of assessable trust company stock in receiver's suit to set aside transfer *held*, not reversible error merely because plaintiff's notice of appeal failed to name transferee as appellee, where sole relief asked by plaintiff was to relieve such party from liability and impose it upon the transferor who was really the only defendant interested in the appeal.

SHARPE, J., dissenting.

Appeal from Wayne; Chenot (James E.), J.  Submitted June 5, 1936.  (Docket No. 72, Calendar No. 39,023.)  Decided December 9, 1936.

Bill by Detroit Trust Company, a Michigan corporation, receiver of Guaranty Trust Company of Detroit, a Michigan corporation, against Mabel R. Hockett and Clara H. Cole to set aside a transfer of assessable stock and recover the assessment.  From decree for plaintiff against defendant Cole only, plaintiff appeals.  Reversed and judgment ordered entered against defendant Hockett.

*A. W. Sempliner* (*Jason L. Honigman* and *Wm. M. Sempliner*, of counsel), for plaintiff.

*Grant M. Hales* and *S. Pointer Bradley*, for defendant.

SHARPE, J. (*dissenting*).  This is an action commenced by the Detroit Trust Company, as receiver, to recover a statutory stockholders' assessment upon the ownership of 60 shares of the capital stock of the Guaranty Trust Company of Detroit, a Michigan corporation.  On the 15th day of April, 1931, the defendant, Mabel R. Hockett, transferred 60 shares of stock of said corporation to Clara H. Cole.  On July 1, 1931, this company was closed by action of the State banking commissioner who filed a bill of complaint in the circuit court of Wayne county resulting in the appointment of the Detroit Trust Company as receiver and on July 24, 1931, the company was found to be insolvent and the receivership was made permanent.  On April 11, 1932, upon petition of the receiver an order was entered fixing the statutory stockholders' liability at $100 per share.  The validity of this assessment was sustained by this

court on appeal in *Detroit Trust Co.* v. *Allinger,* 271 Mich. 600.

Prior to 1930, the Guaranty Trust Company of Detroit had paid dividends of 15 per cent. of the par value of the stock. This stock was sold and traded on the Detroit stock exchange and during the year 1928 fluctuated between $280 and $340 per share. However, during the year 1930 it showed a rapid decline in market value and on December 22d of that year sold at $10 per share on the exchange; thereafter it was removed from trading on the exchange.

In September, 1930, a new president took charge of the trust company and shortly thereafter called the attention of the board of directors to the serious condition of the company. In February, 1931, the trust company attempted to borrow additional funds, but succeeded in getting only $50,000 of the $200,000 asked for. On March 23, 1931, the banks in the city of Detroit refused to make them additional loans. Following this failure the president and counsel for the trust company advised with the State banking commissioner, the result of which was a meeting of the stockholders of the trust company at which time the stockholders were informed that unless additional funds were raised the banking commissioner would be forced to take action to close the company. Thereupon a committee was appointed to contact the stockholders and solicit subscriptions, on which committee was Roland R. Hockett, son of Mabel R. Hockett. It also appears that Roland R. Hockett handled many of the business affairs of his mother, such as her interest in the Guaranty Trust Company, the Guaranty Investment Company, and the Guaranty State Bank. They had the same business and residence address. At the time of the transfer of the stock of Mabel R. Hockett, it was

transferred through the personal account of Roland R. Hockett with the brokerage house of D. M. Woodruff & Company. At the time of the trial of the cause, Mabel R. Hockett, Roland R. Hockett, and Clara H. Cole did not appear and testify owing to the failure of the officers to serve a subpœna upon any of said parties. The trial court after hearing the testimony rendered judgment against Clara H. Cole and dismissed the bill of complaint against Mabel R. Hockett.

It is plaintiff's position that:

1. By virtue of the statute, 3 Comp. Laws 1929, § 12005, any transfer of stock during the four months preceding the closing of a trust company subjects the transferor to liability for any stockholders' assessment thereafter levied. Defendant Hockett, concededly, transferred her stock during this four-month period and she must therefore be held liable irrespective of any question of her intent in making the transfer;

2. In the event the statute is so construed as to require proof of a fraudulent transfer, defendant Hockett should be held liable because the transfer of her stock was fraudulent as to the creditors of the trust company.

The liability of stockholders of a trust company is fixed by that portion of 3 Comp. Laws 1929, § 12024, which provides:

"The stockholders of every trust company shall be individually liable, equally and ratably, and not one for another, for the benefit of the creditors of said trust company to the amount of their stock at the par value thereof, in addition to the said stock."

The statute dealing with the effect of a transfer of stock is 3 Comp. Laws 1929, § 12005, the relevant part of which provides:

"All sales, transfers, and assignments of any stock made or given with the intent and purpose on the part of such stockholder to hinder, delay, or defraud the creditors of such company or any of them shall be null and void as against the creditors of such company, except as to purchasers in good faith and for present fair consideration, if made within four months prior to the filing of a petition asking for the appointment of a receiver of such company."

We are unable to agree with plaintiff's contention that any transfer of stock during the four months preceding the closing of a trust company subjects the transferor to liability for any stockholders' assessment thereafter levied. The statute provides that if such transfer be made "with the intent and purpose on the part of such stockholder to hinder, delay, or defraud the creditors of such company or any of them," it "shall be null and void." In our opinion the language of the statute is unambiguous. In *Village of Kingsford* v. *Cudlip,* 258 Mich. 144, we quoted with approval from *Handy* v. *Township of Meridian,* 114 Mich. 454, 457:

" 'Courts are not to tamper with the clear and unequivocal meaning of words used in a statute. There can be no departure from the plain meaning of a statute on grounds of its unwisdom or of public policy.' "

In *MacQueen* v. *City Commission of Port Huron,* 194 Mich. 328, we said:

"It is a cardinal rule that the legislature must be held to intend the meaning which it has plainly expressed, and in such cases there is no room for construction, or attempted interpretations to vary such meaning."

It is next contended that defendant Hockett should be held liable because the transfer of her stock was fraudulent as to the creditors of the trust company. In such cases the burden of proof rests upon plaintiff

and the proof necessary was well stated in *Foster* v. *Row*, 120 Mich. 1 (77 Am. St. Rep. 565), where the court held that the burden is upon the receiver of an insolvent bank to show that a transfer of stock was made by the stockholder for the fraudulent purpose of avoiding liability as such stockholder.

It appears that at the time of the transfer of the stock, the company was at least in a condition bordering on insolvency, but to what extent this knowledge was conveyed or known to Mabel R. Hockett is the problem in the instant case. Neither Mrs. Hockett, her son, nor Mrs. Cole testified at the trial. The defendant knew that she had not received any dividend from her stock since March, 1930, but this fact standing alone is not sufficient to charge her with knowledge of the insolvency of the company; nor does the record disclose that she knew the value of the stock at the time of sale. It is also charged that Roland R. Hockett was the agent of Mabel R. Hockett. We think there is some testimony that an agency between these parties existed for certain purposes, but we are unable to find that Roland R. Hockett was the agent of his mother, Mabel R. Hockett, in the holding of her Guaranty Trust Company stock. Nor does the record disclose how much information Roland R. Hockett had as to the financial condition of the Guaranty Trust Company at the time of the transfer complained of here or how much of this knowledge, if any, he transmitted to defendant Mabel R. Hockett.

We think the trial court was correct in concluding that plaintiff failed to prove that the transfer of the stock was made for the purpose of defrauding creditors. The decree should be affirmed, with costs to defendant.

BUTZEL, J. I am not in accord with the views expressed in the foregoing opinion. It is true that fraud may not be presumed and that the plaintiff has the burden of proof to establish fraud. However, when the inferences from the facts are so strong as to make out a *prima facie* case of fraud and defendant chooses to remain silent and offers no explanation to refute the irresistible inferences from the record as presented, plaintiff should recover.

The bill was brought to impose a stockholders' liability upon Mrs. Hockett as transferor of 60 shares of stock in the Guaranty Trust Company within four months prior to the time when the insolvency of the company forced a receivership. Paragraph 8 of the bill of complaint charged that Mrs. Hockett had made the transfer of these shares to Clara H. Cole in order to hinder, delay and/or defraud the creditors and that the transfer was not one in good faith, but was made for the purpose of avoiding the liability imposed by law; that the transfer was made in violation of 3 Comp. Laws 1929, § 12005; that the transferor had knowledge of the insolvency of the company, and the probability of the stockholders' assessment and that the transfer was made for the purpose of avoiding such assessment. In answer to the serious charges in this paragraph of the bill, Mrs. Hockett does not set forth the details in regard to the transfer, but simply "denies that she is liable or in any way indebted as a stockholder to plaintiff and denies that any proper demand has been made upon her which she ought to, but has not complied with." No attempt was made to deny the general allegations of this paragraph in any other portion of her answer, except that in one paragraph, she states that she is informed and believes that the

alleged insolvency of the company was due to the fact that the Guaranty Trust Company was unlawfully guaranteeing bonds. Failure to make explicit denial, or at least a statement of insufficient knowledge to form a belief, in response to the material allegations in a bill constitutes an admission of itself. Court Rule No. 23, § 2 (1933). However, as this question was not raised in appellant's brief, we will proceed on the theory that the answer was intended to deny the allegations of the bill and that its evasiveness is insufficient to excuse plaintiff from proving its charges. The record fully justifies reversal of the case and the entering of a decree in favor of the plaintiff, imposing liability on appellee as prayed for in the bill of complaint.

The record indicates that the Guaranty Trust Company was *in extremis* on March 23, 1931, when an informal meeting of the stockholders was held. The previous month, the First National Bank of Detroit refused to make a loan of $50,000 to the company on the company's credit, but stated that it would prefer to make a loan on the personal note of Mr. Gauss, one of its directors. On March 23, 1931, the bank had refused to make a loan of $200,000 to the company, whereupon Mr. Quisenberry, the president of the company, and the company's attorney went to the office of the State banking commissioner and, in the words of Mr. Quisenberry, stated that "we had come over there to surrender our swords." The full details of this meeting are not given. It was finally agreed, however, that the company would attempt to raise $200,000 in order to keep itself going, as its cash had been almost entirely depleted. That same night an informal meeting of the stockholders was held. It is true that at the time the company's statement showed solvency and a sur-

plus. It also showed, however, that some $12,000,000 in bonds had been sold with the company's guaranty. These guaranties were considered contingent liabilities, many of which were ripening into absolute liabilities at the time. On March 2, 1933, almost two years later, in the case of *Reichert* v. *Metropolitan Trust Co.*, 262 Mich. 123, we held similar guaranties to be *ultra vires*. We only refer to the guaranties to show the condition of the company as reflected by its books, and as appearing on its published statements at the time. $224,500 of additional bonds had been sold under a repurchase agreement by the company. The many defaults in mortgage bonds were known, and the bonds guaranteed were not being paid, the company taking advantage of the 18 months' extension provision of their guaranty.

We take judicial notice of the depression and the accompanying depreciation in real estate values. Notwithstanding that the company was well aware of the defaults in payments, no proper adjustment was made on the books to reflect such depreciation. The company was already carrying at full value past due bonds amounting to $244,861.62; other bonds not due, $62,745; bonds pledged to secure loans, $756,100. The company had on hand $2,892.95 in the office and $153,776.96 due from Federal agents and other banks and its cash position improved but slightly before the company finally closed its doors. The amount of cash and bank credits, however, was less than the sums due on trust accounts so that if the entire amount of cash had been segregated and allocated to the trust deposits, the cash resources would have been entirely depleted. The company owed on trust deposits $420,496.72, on bills payable $1,015,333, on corporation agency deposits $92,007.43, and on contracts payable $7,084.68, on certificates of deposit

outstanding $177,958.54 and on real estate mortgage bonds and notes payable $24,500. It is true that the statement of March 25, 1931, showed capital stock, surplus and undivided profits of $1,356,192.73, but with the lack of cash and the liabilities offset by assets carried on the books at the original appraisals without proper depreciations or adequate reserves, the precariousness of the condition was evident or must have been on March 23, 1931, to those who attended the stockholders' meeting.

At the hastily called meeting of a number of stockholders on March 23, 1931, those present were asked to purchase $200,000 of the trust company's first mortgage leasehold bonds on the company's building. The record shows that $153,000 was subscribed for this purpose but only $101,500 was paid. Roland R. Hockett, son of Mrs. Hockett, subscribed for $1,000 and was appointed a member of the committee to solicit other subscriptions. There is no doubt but that Mr. Hockett was present at least part of the time during the meeting. A receiver was appointed for the company the following July. The reports in the receivership proceedings show that the company was hopelessly insolvent, after excluding what was formerly believed a liability on the $12,500,000 of guaranteed bonds. It is true that efforts were made by the stockholders to raise the $200,000 to ward off the receivership, but only a little more than one-half of this amount was collected. The market price of the stock had steadily receded from a "high" of $300 per share and, as shown by the Detroit Free Press on March 22, 1931, the asked price per share was $3 and there were no bids. Mr. Quisenberry, the president, had purchased some stock about this time at $1 per share. When asked whether he had purchased it as an investment or speculation, he answered "as a

speculation.'' There was ample indication that the company could not survive after the first meeting with the banking commissioner notwithstanding the testimony of some of the officers that they thought they could pull the company through. The seriousness of the condition, however, was such as would alarm the most optimistic. The record leaves no conclusion other than that the company was insolvent and that the stockholders at the meeting either knew or should have known the precariousness of the condition.

Mrs. Hockett was 71 years of age in 1931. She and her son resided in the same house in Detroit and they also had the same business office. Roland had acted as agent for his mother in many previous transactions of a minor character. Mrs. Hockett had inherited the stock in question as well as shares in the American State Bank from her husband. She could not help but be impressed with the danger of an assessment on bank or trust company stock. On March 19, 1931, a letter had been mailed to the stockholders of the American State Bank informing them of an assessment on the American State Bank stock. On April 15, 1931, Mrs. Hockett transferred her 60 shares of stock in the trust company to Clara H. Cole. The record does not show just who Clara H. Cole is, except that her attorney referred to her as Miss Cole, and stated that she is a very aged lady, that she was residing in Detroit at the time of the trial, four years later, when she was too ill to come to court and could not be reached by subpœna. On April 3, 1931, Roland R. Hockett transferred 25 shares of his own stock to Gertrude H. Dempsey. The stock was transferred through the personal account of Roland R. Hockett with D. M. Woodruff & Company, brokers, who gratuitously attended to the

transfer. Their records state that the 60 shares, as well as others, were "received, account of Roland R. Hockett." Whether the stock was transferred through a broker's office for convenience or to give the transaction the appearance of a *bona fide* sale, the record does not show. D. M. Woodruff & Company did not act as brokers nor do they claim that the transaction was a sale by them. The stock was transferred on the books of the company on April 15, 1931. After its transfer to Miss Cole, Roland R. Hockett called at the brokers' office and gave them a receipt signed "Clara H. Cole, per R. R. Hockett."

At the time of the trial, after the attorney for the receiver told of the unsuccessful efforts made to subpœna the parties, the trial judge finally decided to proceed without further attempting to bring in the parties, as counsel for appellee stated that both the old ladies were too sick to come to court and appellant stated that service could not be obtained upon Mr. Hockett. No explanation was offered by Mrs. Hockett as to the details of the alleged transfer, as to what, if any, consideration was paid, or the financial responsibility of the transferee or any facts that were in the mind of the transferor when the transfer was made. Defendant had an opportunity to show the *bona fides* of the transaction, but she did not do so. The plain inference from the record is that the sale was not *bona fide,* but was made for the purpose of avoiding a stockholders' assessment that was imminent.

The trial judge seemed to be of the opinion that it was incumbent on the plaintiff to show the full facts. The judge stated to counsel for the receiver:

"All I can say is that it leaves me in a frame of mind where I am very suspicious, and my guess is that Mrs. Hockett knew about this situation and tried

to get out from under the liability. I guess she did. Now you can make the most of that. I do not think that is enough. I would like to know whether it is or not. If that is enough, you are in a fair way to win all of these cases.   *   *   *

"But I do not think that is enough. You see you have to pyramid one piece of guess work upon another. I start out by guessing that Hockett knew the company was insolvent. You say he should have known that, and he subscribed $1,000 to these leasehold bonds. I suppose he did know it. He must have known something.   *   *   *

"You have a circumstantial case here, and I can take a guess that she knows about this proposition, but I want the record clear here that I do not think that is enough. Now if it is, I would like to know it."

He held, however, that plaintiff had not sustained the burden of proving fraud. Sufficient testimony was introduced to make out a *prima facie* case and to shift the burden of proceeding upon the defendant. In *Foster* v. *Lincoln,* 24 C. C. A. 470 (79 Fed. 170), the court said:

"It is well settled that when the holder of shares of stock in a national bank transfers them to a person known to him to be irresponsible, with the intent of escaping liability as a stockholder, such transfer will be held void as to creditors of the bank.   *   *   * Intent in such cases need not be separately proved by direct evidence; it may be found as an inference from all the facts in proof."

When stock in a failing trust company is sold under such suspicious circumstances, as appear in the record of this particular case, so as to leave the sole inference that the transfer was not *bona fide,* and no reasonable explanation is offered by the transferor, the latter is not relieved of the statutory liability. The court may take into consideration the failure of

defendant or other available witnesses to testify. Such failure is in itself a badge of fraud. Roland R. Hockett, unquestionably the agent of his mother, failed or refused to testify. As was said in the case of *Kaine* v. *Weigley,* 22 Pa. 179, 184:

"It is no hardship upon an honest man to require a reasonable explanation of every suspicious circumstance."

Mrs. Hockett claims that an independent suit cannot be brought against her to recover the stock assessment and that she is relieved from liability because she was not made a party defendant in a suit to collect the assessment against other stockholders. Appellee refers us to cases under statutes in other jurisdictions. We need only discuss the statute in this State. The liability of stockholders is based on 3 Comp. Laws 1929, § 12024, wherein it is stated that the stockholders shall be individually liable and that such liability may be enforced in a suit at law or in equity. We find no provision in the law of this State limiting the receiver to a single suit against all the stockholders. In *Pettibone* v. *McGraw,* 6 Mich 441, where suit was filed against stockholders to recover the amount of a judgment and all of them had not been named as defendants in the suit, the court held that a demurrer for nonjoinder could not be sustained. See, also, *Dukeman* v. *Beisley,* 250 Ill. App. 537. Several and individual actions were proper.

The lower court relieved Mrs. Hockett of liability but held Clara H. Cole liable. Plaintiff gave general notice of appeal in which it described Mrs. Hockett as defendant appellee and Clara H. Cole as defendant. Miss Cole filed no cross-appeal. It is claimed that the appeal should be dismissed because Clara H. Cole was not named as an "appellee." While it

might have been better to include Miss Cole as an appellee, we find no reversible error on that account. The relief asked by the plaintiff was that Mrs. Hockett be held liable, but if the court should find otherwise, then Miss Cole should be liable. Mrs. Hockett was really the only interested party in the appeal and it is obvious that Miss Cole would not contest an appeal, one object of which was to relieve her of a money decree of over $6,000.

The decree of the lower court is reversed and one will be entered in this court for the full amount of the assessment and interest, with costs to plaintiff.

NORTH, C. J., and FEAD, WIEST, BUSHNELL and TOY, JJ., concurred with BUTZEL, J. POTTER, J., did not sit.