BRUSO *v.* PINQUET.

1. TRUSTS—GOVERNMENT BONDS PURCHASED WITH PROCEEDS OF ENTIRETY PROPERTY—CONSIDERATION—EXPLANATION.

In suit by elderly invalid against his deceased wife's niece and another to impress a trust upon government bonds purchased shortly before wife's death from moneys then under her control and which represented proceeds from sale of properties they had owned as tenants by the entireties, where defendants had actively participated in and knew all about the transactions involved but neither took the witness stand nor offered any explanation and do not appear to have given any consideration for bonds worth $15,650, the court was justified in drawing a presumption against them.

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 24 Am. Jur., Fraud and Deceit, § 283.
[1, 8–10] 54 Am. Jur., Trusts, §§ 218, 220.
[2, 3] 24 Am. Jur., Fraud and Deceit, §§ 256, 257.
[3] 19 Am. Jur., Equity, § 43.
[4, 5] 24 Am. Jur., Fraud and Deceit, § 255.
[7] 54 Am. Jur., Trusts, § 222.
[8, 9] 54 Am. Jur., Trusts, § 565.
[9] 19 Am. Jur., Equity, §§ 41, 119.
[9] Election of remedies: Inconsistency of action for damages for fraud and suit to establish constructive trust based on same transaction. 35 A.L.R. 1175; 43 A.L.R. 177.
[11] 20 Am. Jur., Evidence, § 246.
[12] 19 Am. Jur., Equity, § 392.
[13] 24 Am. Jur., Fraud and Deceit, § 241.
[14] 3 Am. Jur., Appeal and Error, § 1027.

2. Fraud—Inferences—Prima Facie Case—Burden of Explana-
TION.

When inferences from facts presented by plaintiff are so
strong as to make out a prima facie case of fraud, the de-
fendants' silence and failure to offer an explanation to re-
fute such inferences constitute, in themselves, a badge of
fraud.

3. Same—Presumptions—Burden of Proof.

Fraud may not be presumed and one seeking to recover because
of defendant's fraud has the burden of proof to establish such
fraud.

4. Husband and Wife—Wife as Fiduciary.

Where husband is aged and infirm, and wife attended to their
family affairs, she has duty to handle their joint resources
in the interests of both.

5. Fraud—Fiduciaries—Good Faith—Burden of Proof.

In suit to impress a trust upon government bonds and some
cash on ground of fraud of present holder thereof, defend-
ants, who stood in fiduciary relation to plaintiff's wife, now
deceased, and obtained a large amount of proceeds of en-
tirety property from her without consideration, had burden
of showing fairness and good faith of transactions.

6. Same—Fiduciary Wife—Undue Influence.

Where elderly invalid entrusted his wife with their joint re-
sources and she so handled them without his knowledge as
to result in their being placed no longer in their joint names
but either in her own name or the joint names of herself and
niece, she was guilty of a fraudulent violation of her trust
obligation to her husband and where the wife entered into
such transactions under the prompting and influence of de-
fendants, they were equally parties to the fraud.

7. Trusts — Fraud — Undue Influence — Duress — Construc-
tive Trusts.

Whenever the legal title to property has been obtained through
actual fraud, misrepresentation, concealments, or through un-
due influence, duress, taking advantage of one's weakness or
necessities, or through any other circumstances which ren-
der it unconscionable for the holder of the legal title to re-
tain and enjoy the beneficial interest, equity impresses a
constructive trust on the property thus acquired in favor
of the one who is equitably entitled thereto although he
may never have had any legal estate therein.

8. SAME — EQUITY — JURISDICTION — WRONGDOERS — GOOD-FAITH
   PURCHASER.

   A court of equity has jurisdiction to reach property wrong-
   fully obtained either in the hands of the original wrongdoer,
   or in the hands of any subsequent holder, until a purchaser
   of it in good faith and without notice acquires a higher right,
   and takes the property relieved from the trust.

9. SAME—CONSTRUCTIVE TRUST.

   The principle of constructive trust will be applied wherever it
   is necessary for the obtaining of complete justice, although
   the law may also give the remedy of damages against the
   wrongdoer.

10. SAME—CONSTRUCTIVE TRUST—CONSIDERATION—VIOLATION BY FI-
    DUCIARY.

    The trial court properly impressed a constructive trust upon
    government bonds and cash held by defendants as a result
    of transactions they had had with plaintiff's wife, now de-
    ceased, whereby she, in violation of her trust with respect
    to joint resources of herself and husband, had so handled
    them as to cause title thereto to vest in defendants upon
    her death without having received consideration therefor.

11. EQUITY—REOPENING PROOFS—FRAUD—MENTAL COMPETENCY.

    Motion to reopen proofs after trial court had filed opinion find-
    ing fraud on part of defendants was properly denied, where
    additional testimony sought to be presented related to men-
    tal competency of plaintiff's deceased wife and such matter
    was not in issue and had not been determined by the trial
    court.

12. SAME—EVIDENCE—FRAUD—MENTAL COMPETENCY.

    Admission of a defendant's petition to have plaintiff's wife de-
    clared mentally incompetent was not error where although is-
    sue of mental competency was not in issue, petition was ad-
    missible as evidence of such defendant's fraudulent purpose
    in obtaining property upon which plaintiff sought to impress
    a constructive trust.

13. SAME—CONSTRUCTIVE TRUST—PARTIES.

    Party who had full knowledge of transactions whereby he and
    another had participated in fraudulently obtaining property
    and who had actual custody of the property involved was a
    proper party defendant in his individual capacity in suit to
    impress a constructive trust.

14. APPEAL AND ERROR — EVIDENCE — MATTERS EQUALLY WITHIN
   KNOWLEDGE OF DECEASED—HEARSAY.
   Admission in chancery case of deposition allegedly containing
   testimony on matters equally within the knowledge of plain-
   tiff's deceased wife and also hearsay testimony was not re-
   versible error, where same result would follow even though
   testimony so objected to were disregarded (3 Comp. Laws
   1929, § 14219).

Appeal from St. Clair; George (Fred W.), J.   Sub-
mitted April 8, 1948.   (Docket No. 35, Calendar No.
43,955.)   Decided June 14, 1948.

Bill by Henry Bruso against Edna M. Pinquet
and Fred Koenig, individually, and as special ad-
ministrator of the estate of Margaret E. Bruso, de-
ceased, to impress a trust on certain property.   De-
cree for plaintiff.   Defendants appeal.   Affirmed.

*Walsh, Walsh, O'Sullivan & Schlee,* for plaintiff.

*D. J. McColl, Jr., Benedict & Benedict,* and *Burke,
Burke & Smith,* for defendants.

DETHMERS, J.   This suit is brought to impress a
trust in favor of plaintiff upon government bonds of
a maturity value of $15,650 registered in the name of
plaintiff's wife, Margaret Bruso, now deceased, and
of her niece, defendant Edna M. Pinquet, and held
by defendant Fred Koenig, and also upon the sum of
$3,300 in cash held by defendant Koenig as special
administrator of the estate of Margaret Bruso and
claimed by defendants to be an asset of said estate,
of which defendant Pinquet is made sole beneficiary
under decedent's will.

Plaintiff, an invalid over 80 years of age, and
his wife, who died August 27, 1946, at about 70 years
of age, had lived for years in the city of St. Clair
where they accumulated considerable real estate as

tenants by the entireties paid for, as may fairly be inferred from the record, out of plaintiff's earnings. In the last few years, plaintiff being feeble, his wife largely looked after family affairs.

In 1945, they sold one piece of real estate for $2,500, added $800 to the proceeds and bought bonds worth $3,300 issued in their joint names. They also owned other bonds of a maturity value of $1,250 registered in their names jointly, and bonds, worth $900, registered in Mrs. Bruso's name. On May 1, 1946, they sold another piece of property, netting $11,311.68 therefrom, which was deposited in their joint bank account. It is a fair inference from the record that all the bonds were purchased out of the husband's income or the income from or proceeds from sale of their entireties properties.

In May of 1946, defendant Pinquet started calling on Mrs. Bruso frequently. Often they would talk alone in the kitchen, behind closed doors, sometimes sending the Brusos' housekeeper out of the house so that they could be alone. On one occasion, about the middle of May, defendant Pinquet brought defendant Koenig to the house and introduced him to Mrs. Bruso. About then the things concerning which plaintiff here complains began to happen, all, as appears from admissible testimony in the record, without plaintiff's knowledge. On May 20, 1946, Mrs. Bruso withdrew $10,035 from the joint bank account and bought bonds of a maturity value of $13,500, registered in her name. On July 15, 1946, Mrs. Bruso executed a will naming defendant Pinquet sole beneficiary and on July 17th powers of attorney to both defendants, granting them almost unlimited powers over her property. On July 19, 1946, Mrs. Bruso caused the said $13,500 group of bonds to be reissued in her name and that of defendant Pinquet as co-owners. On that same date she caused the $900 group of bonds registered in her

name and the $1,250 group of bonds registered jointly in the names of herself and her husband to be reissued jointly to herself and defendant Pinquet. On that date she also cashed the $3,300 group of bonds owned jointly by herself and her husband, the proceeds of which are now held by defendant Koenig as hereinbefore noted. These bond transactions occurred in a bank in the presence of both defendants. Mrs. Bruso stated to an employee of the bank that she was finding it hard to attend to the affairs of the family and that defendant Pinquet was going to take care of her.

Shortly after all this had been accomplished the defendant Pinquet, on August 1, 1946, filed in the probate court a petition for appointment of a guardian for Mrs. Bruso on the grounds of mental incompetency and thereafter filed a physician's certificate to the effect that Mrs. Bruso was, upon examination on July 6, 1946, mentally incompetent to have the control of her property. Defendant Pinquet's petition listed the names of 18 relatives, giving the precise relationship of each to Mrs. Bruso, but indicating their addresses to be unknown, to that extent handicapping the service of notice of the proceedings upon them. A few days later defendant Pinquet, with the help of two men, forcibly took plaintiff from his home and placed him in a nursing home in a neighboring county. Three days later defendants took Mrs. Bruso from her home and placed her in the same nursing home. When defendants came for Mrs. Bruso they ordered the Bruso housekeeper to leave the family washing and informed her that under a court order the house must be vacated by 2 o'clock of that same day. No such court order ever existed. Mr. Bruso was not informed of his wife's presence in the nursing home and defendants kept the other relatives in the dark as to the whereabouts of the Brusos, despite their inquiries in that

connection. A week or two later Mrs. Bruso died in the nursing home. Defendant Pinquet thereupon claimed ownership of all the bonds and the right to inherit the $3,300 cash under decedent's will.

Both defendants were present at the trial in the court below, but neither deigned to take the witness stand, nor was one word of testimony offered for the defense in explanation or justification of what are, at best, the suspicious circumstances under which defendant Pinquet claims to have acquired assets worth almost $19,000, without the giving of any consideration on her part, while plaintiff, who had been joint owner and who, but for the above noted transactions, would now have been the sole owner of all of said assets is now left destitute. Although Mrs. Bruso stated to the bank employee that she had found it difficult to attend to the family affairs and that defendant Pinquet was going to take care of her, nevertheless, the record discloses nothing which defendant Pinquet did or agreed to do for the Brusos. The latter were living in their own home, enjoying the service of their housekeeper and had ample means for their support. It does not appear that there was anything the Brusos needed done that defendant Pinquet did do for them. True, Mrs. Bruso's will requested defendant Pinquet to see that her husband "is taken care of up to the extent of my estate which may then be remaining." But why was defendant to receive bonds totalling in value $15,650 for doing nothing more than paying out from time to time, from the not to exceed $3,300 left in decedent's estate, such amounts as plaintiff's care might require? That question is left unanswered by defendants. Applicable to them is the following from *Manhard Hardware Co.* v. *Rothschild,* 121 Mich. 657:

"It was in their power to place the bona fides beyond question. They chose to remain silent. The

failure to produce this evidence, so peculiarly within their knowledge, justifies courts in drawing a presumption against them."

Equally relevant here is the following from *Kaine* v. *Weighley,* 22 Pa. 179, 184, quoted with approval in *Detroit Trust Co.* v. *Hockett,* 278 Mich. 124:

"It is no hardship upon an honest man to require a reasonable explanation of every suspicious circumstance."

When, as here, inferences from facts presented by the plaintiff are so strong as to make out a prima facie case of fraud, the defendants' silence and failure to offer an explanation to refute such inferences constitute, in themselves, a badge of fraud. As said in *Detroit Trust Co.* v. *Hockett, supra*:

"It is true that fraud may not be presumed and that the plaintiff has the burden of proof to establish fraud. However, when the inferences from the facts are so strong as to make out a prima facie case of fraud and defendant chooses to remain silent and offers no explanation to refute the irresistible inferences from the record as presented, plaintiff should recover."

Mrs. Bruso's statement that she was finding it hard to attend to the affairs of the family and that defendant Pinquet was going to take care of her, coupled with her execution of the powers of attorney, discloses a fiduciary relationship existing between her and defendants.

"In a suit to set aside conveyances on ground of fraud and undue influence, grantee, who stood in fiduciary relation to grantor, and who obtained, without consideration, large amount of property from grantor, has burden of showing fairness and good faith of transactions." *Connor* v. *Harris* (syllabus 4), 258 Mich. 670.

Mr. Bruso having become aged and infirm, Mrs. Bruso attended to their family affairs. It was her duty to handle their joint resources in the interests of both. In *Ridky* v. *Ridky*, 226 Mich. 459, we said:

"It is not an uncommon practice amongst laboring people circumstanced as they were and dependent upon the earnings of the husband for him to regularly turn over most or all of his wages to his wife, as their joint hoard to be kept and disbursed by her as conditions warrant, largely in her discretion but in a sense as his agent acting for their common good. * * * Ridky was a nonparticipant in her purchase of this property from a third party, a stranger who conveyed title to her in her own name, she using for that purpose their family fund accumulated as above described. * * * The theory of Ridky's bill of complaint is a fraudulent violation of her trust obligations to handle their joint resources in the interest of both by taking and retaining title to realty bought with their joint money, claiming to be the sole owner and refusing to recognize his interest. * * * In passing upon the issues of this case a court of equity can and should recognize * * * their close fiduciary relations as husband and wife, * * * and their long-settled plan of joint interest in their limited accumulations, intrusted entirely to her management. * * * We do not disagree with the conclusion of the trial court that under the proofs Ridky * * * has established his right in equity to recognition as joint owner by entireties with his wife of their home, and that it would be unjust 'to send him into the world penniless at this day.'"

When Mrs. Bruso, without the knowledge of her husband, engaged in the transactions as the result of which their joint resources were no longer held in their joint names and some of them became registered in the joint names of herself and her niece, she was guilty of a fraudulent violation of her trust obligations to her husband, the plaintiff. All this

she manifestly did under the prompting and influence of defendants.  They were equally parties to the fraud.

In *Rice* v. *Allen,* 318 Mich. 245, and in *Morris* v. *Vyse,* 154 Mich. 253 (129 Am. St. Rep. 472), we quoted with approval from 3 Pomeroy on Equity Jurisprudence (3d Ed.), § 1053, the following:

" ' "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means, or under any other similar circumstances, which render it unconscionable for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property, either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust.  The forms and varieties of these trusts, which are termed *'ex maleficio'* or *'ex delicto,'* are practically without limit.  The principle is applied wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer." ' "

The trial court properly impressed a trust upon the above described property in favor of plaintiff and decreed him to be the owner thereof.

After the lower court's opinion had been filed defendants moved to "reopen the testimony" for the purpose of taking additional testimony on the mental competency of Mrs. Bruso.  The motion was properly denied on the ground that her mental competency was not an issue before nor was it deter-

mined by the court. The decree was based on a finding of fraud, not on a finding of mental incompetency on the part of Mrs. Bruso.

Defendants charge as error the admission of defendant Pinquet's petition for appointment of a guardian for Mrs. Bruso because the latter's mental competency was not in issue. The petition was admissible as evidence of defendant Pinquet's fraudulent purpose in the transactions herein complained of by plaintiff.

The trial court denied defendant Koenig's motion to dismiss as to him personally. He has actual custody of the property involved and, with full knowledge of the entire affair, participated in the fraudulent transactions. The motion was properly denied.

Defendants complain of the admission of the deposition of plaintiff, allegedly containing testimony on matters equally within the knowledge of the deceased,* Mrs. Bruso, and also of testimony deemed hearsay. This is a chancery matter, heard by the trial court without a jury and by this Court *de novo*. Utter disregard of all the testimony so objected to leaves our views as to the correctness of the decree unaltered.

Decree affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.

---

* See 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914). —REPORTER.