ADADO *v.* ASSID.

1. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.
   Plaintiff and wife may not testify as to oral contract he had made
   with decedent relative to latter leaving him a portion of her
   property in return for services he was to render to her during
   her lifetime by reason of application of the statute barring
   testimony of opposite parties as to matters equally within
   the knowledge of the deceased (CL 1948, § 617.65).

2. EVIDENCE—ADMISSIONS OF A DECEDENT.
   Admissions of a decedent are the most unreliable proof known
   to the law and should be received with careful scrutiny, par-
   ticularly when the testimony comes from interested witnesses.

3. SPECIFIC PERFORMANCE—ORAL CONTRACT TO DEVISE PROPERTY—
   CONSIDERATION—STATUTE OF FRAUDS—EVIDENCE.
   Evidence adduced in suit for specific performance of alleged
   oral contract on part of decedent to leave ½ of her property to
   plaintiff, a younger brother of her late husband, whom they
   had brought to this country from Syria and raised practically
   as their own son, *held*, insufficient either to establish the alleged
   contract or such part performance thereof as would, under the
   circumstances, justify granting relief from operation of the
   statute of frauds (CL 1948, § 566.108).

4. FRAUDS, STATUTE OF—ORAL CONTRACT—PART PERFORMANCE—
   EQUITABLE ESTOPPEL.
   Part performance of an oral contract to convey an interest in

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses § 214 *et seq.*
[1] Statute excluding testimony of one person because of death of
    another as applicable to testimony as to services upon which
    his claim against decedent's estate is based.   155 ALR 961.
       Dead man's statute as applicable to testimony denying trans-
    action or communication between witness and person since de-
    ceased.   8 ALR2d 1094.
[3–6] 49 Am Jur, Statute of Frauds §§ 215, 216, 518 *et seq.*, 621,
    622. ·
[3–6] Decedent's agreement to devise, bequeath, or leave property
    as compensation for services.   69 ALR 14;  106 ALR 742.
       Doctrine of part performance in suits for specific performance
    of parol contract to convey real property.   101 ALR 923, 1091.
[7] 49 Am Jur, Specific Performance §§ 8, 9.

land does not alone justify equitable relief from application of the statute of frauds, it being necessary to show misleading or fraudulent conduct by act or acquiescence impelling application of the principle of equitable estoppel to deny resort to the statute of frauds as an instrument of fraud (CL 1948, § 566.108).

5. SPECIFIC PERFORMANCE — ORAL CONTRACT — CONSIDERATION — EVIDENCE.

Testimony as to satisfaction of deceased with personal services rendered to her by plaintiff *held*, insufficient to establish adequate consideration for her alleged oral contract to leave him ½ of her estate upon her death and relieve plaintiff from application of the statute of frauds in his suit for specific performance of the alleged contract (CL 1948, § 566.108).

6. SAME—SUPPRESSION OF PAPERS BY FIDUCIARY—FAILURE TO ESTABLISH PRIMA FACIE CASE—DISCLOSURE.

Failure of plaintiff to establish a prima facie case that defendant special administrator of estate of deceased of whose alleged oral contract plaintiff sought specific performance, had suppressed certain of decedent's papers that would have tended to establish the rights of plaintiff and others in the estate did not establish a duty of disclosure on the part of the administrator in his fiduciary capacity, especially where such administrator was present but not called for cross-examination as an adverse witness (CL 1948, § 617.66).

7. SAME—RELIEF A MATTER OF GRACE.

Specific performance is not a matter of right but of grace.

Appeal from Ingham; Hayden (Charles H.), J. Submitted January 9, 1952. (Docket No. 18, Calendar No. 45,262.) Decided March 6, 1952.

Bill by Kamil F. Adado against Ferrell Assid and others for specific performance of an oral agreement. Decree for defendants. Plaintiff appeals. Affirmed.

*William C. Brown,* for plaintiff.

*Benjamin F. Watson* (*Claude J. Marshall,* of counsel), for defendants.

Butzel, J.   Anna Adado of Lansing, Michigan, died testate on October 3, 1947, and her will dated February 20, 1940, was admitted to probate. It had been drawn by the late Fred L. Warner, an able lawyer of that city and witnessed by him and Harry Lebuda, a Lansing insurance agent. Under the will the entire estate, inventoried at over $90,000, was left to 4 nephews and 1 niece, all children of decedent's late brother, Harry Assid. They, together with 1 of them, Alfred Assid, who was appointed administrator with will annexed, were made defendants herein in a bill filed by Kamil F. Adado, frequently called and referred to as Tom, who is the younger brother of decedent's husband, Masood F. Adado, who died on March 14, 1934.

Plaintiff asked specific performance of a verbal agreement alleged to have been made between decedent and himself on the evening of the day of his brother's funeral. It appeared that immediately after Masood Adado's funeral the family, including plaintiff, repaired to decedent's home where they had coffee and a light lunch. All of the parties are of Syrian descent and speak Arabic part of the time, and for this reason some difficulty was encountered in translating the conversation of the evening. Decedent was disconsolate and weeping part of the time. She and her late husband in their joint names had accumulated properties of the value of $50,000, or thereabouts, but they were mortgaged for $17,000 or $18,000. The depression was on at that time. In all probability the widow's plight was discussed. It was claimed that she asked the family to help her but the only one who could do so was plaintiff, who at that time was not working full days at his automobile factory job. The late Masood F. Adado had paid the passage money for and had brought plaintiff to this country, and he and decedent had raised him, regarding him almost as their own son. There was

no doubt that the latter was grateful and anxious to help. Plaintiff alleges that decedent agreed to leave ½ of her estate to him in consideration for his assisting her with her business and property, she regarding ½ of the joint property as her late husband's share. She was also alleged to have stated that she would leave the other half to her own family. The proofs are extremely vague as to what plaintiff agreed to do.

The lengthy record is far from satisfactory. The lips of decedent are sealed by death; those of plaintiff and his wife by the dead man's statute. See CL 1948, § 617.65 (Stat Ann § 27.914). The testimony as to what took place immediately after the funeral, when the alleged contract was made, is very unsatisfactory particularly in view of the fact that the witnesses who were present are indirectly interested, they being children of plaintiff. One other witness was a sister of decedent and probably unfriendly to defendants because she was left out of the will. This Court has pointed out many times that admissions of a decedent are the most unreliable proof known to the law and should be received with careful scrutiny, particularly when the testimony comes from interested witnesses. See, for example, *Wild* v. *Wild,* 266 Mich 570; *Paris* v. *Scott,* 267 Mich 400; *Hope* v. *Detroit Trust Co.,* 275 Mich 213; *Schulz* v. *Steffey,* 275 Mich 409; *Kerns* v. *Kerns,* 303 Mich 23; *Daugherty* v. *Poppen,* 316 Mich 430.

There was some testimony that decedent had stated that ½ of the property was plaintiff's, but 1 of the latter's children in speaking of the time when something had gone wrong with a furnace in a building belonging to the estate admitted that plaintiff had told decedent to do as she saw fit as it was her business. In addition, the fact that at all other times the decedent did not consult plaintiff as to any of the details of the property he supposedly owned

half of indicates the truth to be a far cry from the claim that he was considered to be the owner of half the property.

Decedent worked very hard throughout the years on her property, even at times doing manual labor. She had a restaurant, then a tavern where beer and wine as well as soft drinks were sold. Plaintiff and other members of the family occasionally helped wait on customers and work around the tavern. She did almost all the work and built up her estate, the debts were paid off, and it almost doubled in size. When decedent was sick the business was closed. She also acquired several additional pieces of property. Plaintiff had a full-time job at an automobile plant most of the time and was able to devote only spare time to decedent's business. There is proof in the record that at one time some work was ordered by plaintiff and he paid for it but there was no showing that he did not get the money from decedent. It would seem extremely unlikely without other proof that he advanced his own moneys at any time without being repaid. There was also some testimony that he did a few odd jobs over the many years but they were such that he might be willing to do because of a deep family obligation.

The circuit court in summarizing plaintiff's contribution to decedent's business stated:

"The record is barren of any real sacrifice on his part. I do not believe that a hard-headed business woman like Anna Adado meant by 'help,' looking in on her of an evening and having a pleasant chat while drinking a glass of beer or waiting on a casual customer. She worked hard herself and knew the difference between work which contributed to her financial advantage and work which was rendered on what seems to have been little more than social calls. Although plaintiff was undoubtedly kind and considerate towards plaintiff (decedent), I find no

evidence of work, either physical or mental, which tended to save the property from foreclosure."

It would serve no useful purpose to detail the mass of testimony. Upon our examination of the record, we find that but little can be added. The testimony is extremely unsatisfactory and the judge expressed himself as being far from convinced that there was either a contract in the first place or that plaintiff had furnished adequate consideration. The court referred to the case of *Daugherty* v. *Poppen, supra,* wherein we said:

"Moreover, part performance, even if established by competent proof, is not alone sufficient to justify equitable relief in a case of this character. In *Lyle* v. *Munson*, 213 Mich 250, it was said:

" 'Part performance, while an essential in the test, does not in itself comprehend the whole doctrine of equitable relief in this class of cases. Misleading fraudulent conduct by act or acquiescence is the underlying thought which moves the chancery court under the principle of equitable estoppel to deny resort to the statute of frauds* as an instrument of fraud. The question is not alone one of part performance, but as said in *Meach* v. *Perry*, 1 Chip (Vt) 182 (6 Am Dec 719):

" ' "Does the part performance, with the attending circumstances, make a case of fraud, against which a court of equity ought to relieve?" ' "

See, also, *Kerns* v. *Kerns, supra,* and *Van Houten* v. *Vorce*, 259 Mich 545.

On the assumption that the contract was for personal services, plaintiff contends that since the proofs show that the personal services were performed to the satisfaction of decedent, no one else can complain, regardless of inadequacy of consideration. *Woodworth* v. *Porter*, 224 Mich 470; *Denevan*

---

* CL 1948, § 566.108 (Stat Ann § 26.908).—REPORTER.

v. *Belter*, 232 Mich 664; and *Woods* v. *Johnson*, 266 Mich 172. An examination of the proofs does not reveal such a situation, however. In the absence of further proof, we are not able to lend enough credence to decedent's supposed declarations of satisfaction to make them the basis of enforcing a contract to convey.

The will, some years prior to the death of decedent, was sent by Mr. LeBuda to the probate court of Ingham county where it was kept until decedent's death. There was some testimony by Mary Saub, a sister of decedent who received nothing under the will, and her son, James Saub, to the effect that decedent had papers in her bureau drawer, in 3 packages, showing what everyone in the family was to get and that defendant Alfred Assid, as special administrator, took all the papers away and thus some documents were suppressed or abstracted which would tend to establish the rights of plaintiff and others in the estate. He did take away a copy of the will which was found in a tin box in the drawer. James Saub described the papers as being 3 or 4 inches in height, formidable documents indeed. The only evidence as to the existence of "three papers" or a thick sheaf of papers in the tin box, or that they presumably are now in the control of Alfred Assid, comes from the Saubs themselves. And, parenthetically, the Saubs have no knowledge as to what these 3 or more papers were except that 1 belonged to the plaintiff. The evidence, in itself rather vague, rests on the testimony of witnesses who themselves were disappointed in their expectation of a share of decedent's property, and could have had some opportunity to examine decedent's papers before or after she died. Perhaps partly for these reasons the court appeared to give little weight to such testimony.

The counsel for Alfred Assid did not put him on the stand to deny or explain these statements. He

evidently did not think it necessary. Counsel for plaintiff cites cases to show that failure to call witnesses to deny facts established prima facie is partly an admission that the facts were true. See *Bruso v. Pinquet,* 321 Mich 630; *Detroit Trust Co. v. Hockett,* 278 Mich 124; *Manhard Hardware Co. v. Rothschild,* 121 Mich 657; *Heath* v. *Waters,* 40 Mich 457, and many others. Plaintiff here, however, failed to establish a prima facie case so no showing was made that the administrator in his fiduciary capacity owed the duty of disclosure to the plaintiff.

The defendant Assid was present and could have been called on, even as an adverse witness,[*] to testify but plaintiff's attorney did not avail himself of this right. Failure to call the administrator for cross-examination substantiates our conclusion for if fraud existed in this case it should have been possible to indicate it on cross-examination.

The trial judge made a careful analysis of the testimony and came to the following conclusion:

"Specific performance is not a matter of right but of grace, as has been stated repeatedly. I am unable to determine, after a full consideration of the testimony, that plaintiff is entitled to specific performance of the alleged contract and a decree may enter, with costs to defendants dismissing plaintiff's bill of complaint but without prejudice."

We have read the record with care and we come to the conclusion that the circuit court correctly dismissed the bill.

The decree is affirmed, with costs to defendants.

NORTH, C. J., and DETHMERS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

---

[*] See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.